**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

**HANKIN PATENT LAW, APC**
Marc E. Hankin, Esq.
N.J. Attorney I.D. No. 057361993
11414 Thurston Circle
Los Angeles, California 90049
Telephone: (310) 979-3600
Marc@HPL.Law
*Attorneys for Plaintiff MMAS Research LLC*

MMAS RESEARCH LLC, a Washington limited liability company,

Plaintiff,

v.

SANOFI WINTHROP INDUSTRIE, a French corporation, F. CHRISTOPHER AUSTIN, an individual, DONALD E. MORISKY, an individual, PHILIP MORISKY, an individual, and DOES 1 through 20, inclusive,

Defendants.

Case No.: 3:26-cv-13206

**COMPLAINT FOR:**

(1) Breach of Contract — Section V(A), Confidentiality (Sanofi);

(2) Rescission and Declaratory Relief — the Addendum and Section X(J) (Sanofi);

(3) Rescission of the Settlement Agreement (Sanofi);

(4) Breach of Contract — Section V(B), Non-Disparagement (Sanofi);

(5) Breach of the Implied Covenant of Good Faith and Fair Dealing (Sanofi);

(6) Breach of the 2017 Licensing Agreement and the 2021 Addendum (Sanofi);

(7) Breach of the Translation Services Agreement (D. Morisky);

(8) Copyright Infringement, 17 U.S.C. § 501 (Sanofi);

(9) Removal and Falsification of Copyright Management Information, 17 U.S.C. § 1202 (Sanofi; D. Morisky);

(10) Misappropriation of Trade Secrets, 18

U.S.C. § 1836 (Sanofi);
(11) Breach of the CR2A — Section II ¶ 14, Non-Disparagement (D. Morisky; P. Morisky);
(12) Tortious Interference with Contract (Austin; P. Morisky; D. Morisky);
(13) Tortious Interference with Prospective Economic Advantage (Austin; P. Morisky; D. Morisky);
(14) Trade Libel and Product Disparagement (Austin; P. Morisky; D. Morisky);
(15) Defamation (Austin; P. Morisky; D. Morisky).

**JURY TRIAL DEMANDED**

Plaintiff MMAS Research LLC, by and through its undersigned attorneys, complains and alleges as follows:

**NATURE OF THIS ACTION**

1. Sanofi handed MMAS Research's adversary the evidence that adversary used to try to end MMAS Research's case.

2. That was the second time it happened. In January 2022 the same counsel took the same customer away from the same licensor, and Sanofi's own file records it as it occurred.

3. On 21 January 2022 Dr. Donald E. Morisky wrote that the "CR2A trumps Sanofi addendum and vests in me ownership of everything MMAS," and directed that the funds Sanofi had paid MMAS Research under the 2021 Addendum be returned. Three days later, on 24 January 2022, Sanofi's vendor manager wrote to Dr. Morisky, copying F. Christopher Austin: "Was Peter Hoeller informed that Morisky Widget will not be used? MMAS is not a party to the amendment to the contract that we are currently reviewing and I am not comfortable sharing contractual agreements with external parties."

4. Peter Hoeller represented both Dr. Morisky and MMAS Research. Sanofi's vendor manager was therefore asking whether the one representative who acted for both principals had been told that the Morisky Widget — the scoring platform the license required — would not be used, in the same sentence in which she recorded that MMAS Research was not a party to the amendment then under review and that she would not share the contract with it. The Licensor had been written out of its

own license, the amendment was being negotiated around it, and Sanofi wrote down, contemporaneously, that it was treating MMAS Research as an external party to its own contract.

5. That joint representation was not informal. Within weeks of the CR2A, each attorney engaged to prosecute the MMAS claims executed a written Representation Agreement in a single common form, retaining that attorney to represent "Dr. Donald Morisky; and MMAS Research, LLC ('Client')" together, in the matters identified as "[s]pecific claims this firm agrees to handle from the list set forth in Exhibit 3 to the CR2A attached hereto as Exhibit A," on a contingency of one third of all money recovered for the Client, with costs borne as to forty-five per cent by Dr. Morisky and fifty-five per cent by MMAS Research, and with costs deducted from the recovery or settlement of a claim.

6. The Representation Agreement with the Law Offices of Kenneth I. Gross & Assoc. of Los Angeles was executed on both sides: Dr. Donald Morisky signed it on 6 January 2021, and Steven Trubow signed it for MMAS Research, LLC on 9 January 2021. The Representation Agreement with Kimberly Fong, Esq. of SF Tech Attorney, San Francisco, is in the identical form and was signed by Dr. Morisky on 6 January 2021. Peter Hoeller and each other attorney engaged on the MMAS claims executed an agreement in that same form.

7. Dr. Morisky and MMAS Research were therefore co-clients, jointly represented by a common panel of counsel, under written retainers keyed to the CR2A, with a shared and documented economic interest in the enforcement of the MMAS rights and a fixed allocation of the costs of enforcing them.

8. Dr. Morisky signed that Representation Agreement on 6 January 2021. Four months later, on 19 May 2021, he wrote to Sanofi that Mr. Trubow "is not authorized to make new business deals nor arrangements for my MMAS scales." On 24 January 2022 Sanofi recorded that MMAS Research was "not a party to the amendment" and was an "external party" to whom Sanofi would not show the contract. The person Sanofi was dealing with had, in writing and under his own signature, already made MMAS Research his co-client in the very claims at issue.

9. In September 2024 Austin attempted the same operation on the same customer. He and Philip Morisky told Sanofi that MMAS Research owned nothing, sent Sanofi litigation papers from two federal cases to prove it, pressed Sanofi to decide against paying MMAS Research before the ninety-day payment period expired, and offered Sanofi a replacement license from their own entity. That time Sanofi paid, and the attempt failed. What Austin obtained instead was the confidential settlement agreement itself.

10. NOTICE AS TO JUDICIAL-PROCEEDING STATEMENTS. No Claim for Relief in this Complaint is pleaded upon any declaration, pleading, exhibit, argument or other statement made

in or filed in the course of any judicial or other governmental proceeding, and no such statement is relied upon as a breach, a defamation or a disparagement. Where this Complaint refers to the declarations filed on 6 June 2025 in the Western District of Washington, it does so as evidence of the disclosure made in breach of Section V(A) of the Settlement Agreement and of the use made of the material so disclosed, and for no other purpose.

11. On 23 August 2024 MMAS Research LLC and Steven Trubow, on the one part, and Sanofi Winthrop Industrie, on the other, executed a Confidential Settlement Agreement and Release resolving MMAS Research LLC v. Sanofi-Aventis France SA, Clario Corporation, F. Christopher Austin and Does 1–20, No. 3:22-cv-04339-ZNQ-DEA, in this Court. Section V(A) provides that its terms, "and all correspondence relating to it, are confidential," and that "no Party shall now or hereafter disclose them to any third party" except in five defined circumstances. Section V(B) provides that no party shall make any public statement regarding the agreement without the other's prior written consent, and that "[n]either Party will disparage the other with respect to the subject matter of the Dispute."

12. Twenty-seven days after signing, Sanofi emailed the executed Settlement Agreement and MMAS Research's wire instructions to Dr. Donald E. Morisky at his university address. Dr. Morisky is the plaintiff in Donald E. Morisky v. MMAS Research LLC et al., No. 2:21-cv-01301-RSM-DWC, in the United States District Court for the Western District of Washington at Seattle, a case in which MMAS Research and Mr. Trubow are the defendants. He forwarded both documents to his son, Philip Morisky, within the hour.

13. Within a day Philip Morisky wrote to Sanofi's in-house and outside counsel, copying F. Christopher Austin — Dr. Morisky's counsel of record in that Washington action — gave Sanofi the case number, told Sanofi that MMAS Research owned nothing, and asked to be put in touch with whoever at Sanofi had authorized the settlement. Sanofi answered the next morning that, "based on your recent emails, we are taking another very close look at this matter and the settlement agreement to determine the appropriate course of action for Sanofi."

14. Over the following three months Philip Morisky and Austin sent Sanofi litigation papers from two federal cases against MMAS Research, told Sanofi that MMAS Research had taken "millions in stolen revenue," told Sanofi that it had "already paid way too much for services that were not even needed or used," pressed Sanofi to decide against paying MMAS Research before the ninety-day payment period expired, and offered Sanofi a replacement license from their own entity. Sanofi received all of it, thanked them for it, said it would "review and discuss internally," and never told MMAS Research that any of it was happening.

15. In the middle of that correspondence, on 3 and 7 December 2024, Sanofi obtained from MMAS Research an Addendum adding Section X(J) to the Settlement Agreement, by which MMAS Research agreed to indemnify Sanofi against any and all claims asserted by Donald E. Morisky, Philip Morisky and their affiliates and licensees regarding use of the Morisky Widget. Sanofi asked MMAS Research to assume that risk while holding, and concealing, a dossier those very people had assembled against MMAS Research.

16. Four days after MMAS Research signed that Addendum, on 11 December 2024, Sanofi's in-house counsel and outside counsel joined a scheduled call with Austin and Philip Morisky and confirmed to them that the settlement payment of $115,000 had been wired to MMAS Research LLC.

17. That confirmation was solicited for a purpose, and it was used for that purpose. On 6 June 2025 Austin and Philip Morisky each filed a sworn declaration in the Western District of Washington, recounting the call and attaching the entire email thread — including an email transmitting the Settlement Agreement itself and MMAS Research's wiring instructions — as a public exhibit. Those declarations were submitted as evidence in support of objections to a Report and Recommendation on a dispositive motion to sanction MMAS Research and Mr. Trubow out of that case. Austin's declaration says in terms that the court had observed the record did not conclusively establish receipt of the $115,000, and that Sanofi's counsel supplied what the bank records did not.

18. In the current round of that action the plaintiff seeks $4.5 million in damages from MMAS Research and Mr. Trubow.

19. The consequence is that a confidential settlement between MMAS Research and Sanofi, its amount, MMAS Research's banking instructions, and Sanofi's own written statement that it was reconsidering the settlement because of what the Morisky side had told it, all now sit on a public federal docket in a case against MMAS Research, where every licensee, counterparty and prospective licensee of MMAS Research can read them.

20. Separately, and after the Settlement Agreement was executed, MMAS Research learned of a second Sanofi-sponsored study that used the MMAS-8 with no license, no permission, no attribution and no copyright notice, and that published the Morisky Widget MMAS-8 scoring and coding criteria in a peer-reviewed journal. That study is not the ELIPRO study and was not conducted under the 2017 Licensing Agreement. It is therefore outside the claims the Settlement Agreement released.

21. None of this was new. In May 2021 Dr. Morisky told Sanofi in writing not to deal with MMAS Research; Austin withdrew that position eight days later, confirming to Sanofi that its request

"falls under the existing license Sanofi has with MMAS Research, LLC." In January 2022 Austin reversed again, and Sanofi's own vendor manager wrote to Dr. Morisky, copying Austin: "Was Peter Hoeller informed that Morisky Widget will not be used? MMAS is not a party to the amendment to the contract that we are currently reviewing and I am not comfortable sharing contractual agreements with external parties." Sanofi had decided by January 2022 that it would not use the Morisky Widget as its license required, was negotiating an amendment with Dr. Morisky and Austin from which its own Licensor was excluded, and treated that Licensor as an external party unfit to see its own contract. In September 2024 it sent that Licensor's executed settlement agreement and banking details to Dr. Morisky.

22. Sanofi also warranted, on 23 August 2024, that there were no other persons whose consent or joinder was necessary to make the Settlement Agreement fully effective. It then held in its own files a 2021 Addendum to the very license being settled, naming Dr. Donald E. Morisky as a co-Licensor alongside MMAS Research and signed by him.

23. MMAS Research brings this action for rescission of the December 2024 Addendum and of the Settlement Agreement, for breach of contract, breach of the implied covenant of good faith and fair dealing, copyright infringement, misappropriation of trade secrets, tortious interference, trade libel and defamation. MMAS Research does not seek to keep both the settlement payment and the claims it released: it asks that the $115,000 be credited against its recovery.

**THE PARTIES**

24. Plaintiff MMAS Research LLC ("MMAS Research") is a limited liability company created under the laws of the State of Washington, with its business address at 101 2nd Street, Unit 303, Petaluma, California 94952.

25. MMAS Research is the owner of the "MMAS Research WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No. TX 8-816-517, registration date 3 December 2019 (the "Morisky Widget Copyright"). MMAS Research is also the owner of the Morisky Widget MMAS-8 and the Morisky Widget MMAS-4.

26. Defendant Sanofi Winthrop Industrie ("Sanofi") is a corporation organized under the laws of France and is the successor to Sanofi-Aventis France, whose business was transferred to it on 1 July 2023 as a consequence of an internal reorganization. Sanofi designated, for the giving of notices under the agreement at issue in this action, Matthew Sachs, Sanofi-Aventis, 55 Corporate Drive, Bridgewater, New Jersey 08807.

27. Defendant F. Christopher Austin is an individual residing in the State of Nevada, practicing at Lex Tecnica, Ltd., 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145. He is

counsel of record for Donald E. Morisky in Donald E. Morisky v. MMAS Research LLC et al., No. 2:21-cv-01301-RSM-DWC, in the United States District Court for the Western District of Washington at Seattle. He was a defendant in the 2022 action in this Court described below.

28. Defendant Dr. Donald E. Morisky is an individual residing in the State of Nevada. He is the plaintiff in Donald E. Morisky v. MMAS Research LLC et al., No. 2:21-cv-01301-RSM-DWC, in the United States District Court for the Western District of Washington at Seattle. He is a named co-Licensor, together with MMAS Research, on the Addendum to Morisky Widget MMAS License Agreement executed in 2021, and he is a party to the Agreement for Translation Services of 27 July 2021 pleaded below.

29. Defendant Philip Morisky, who also appears in the record as Phillip Morisky, is an individual residing in the State of California with a business address at 100 Oceangate, 12th Floor, Long Beach, California 90802. He is the son of Donald E. Morisky. He holds himself out as "Chief Optimusl" of Adherence and has sworn, under penalty of perjury on a federal docket, that he "currently serve[s] as a principal officer of Adherence, the exclusive licensee of the MMAS-4 and MMAS-8 instruments."

30. Does 1 through 20 include, on information and belief, Tatiana Chuvashova, described in Sanofi's own correspondence as "Expert Master Data eVendor & eProc, Sanofi Business Services France," 14 Espace Henri Vallée, 69007 Lyon, France; and Magdalena Potocka, described in Sanofi's own correspondence as "Vendor Manager, DOCS on behalf of Sanofi," writing from Magdalena.Potocka-ext@sanofi.com; together with other officers, employees, agents and affiliates of Sanofi who participated in the acts alleged. Their true names and capacities are otherwise unknown to MMAS Research, which will amend this Complaint to state them when ascertained.

**JURISDICTION AND VENUE**

31. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because the Eighth and Ninth Claims for Relief arise under the Copyright Act, 17 U.S.C. §§ 101 et seq. and 17 U.S.C. § 1202, and under 28 U.S.C. § 1331 because the Tenth Claim for Relief arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836.

32. This Court has supplemental jurisdiction over the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eleventh, Twelfth, Thirteenth and Fourteenth Claims for Relief under 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III.

33. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred here. The emails by which Sanofi disclosed the

Settlement Agreement, its terms and the payment under it were sent and received by Sanofi's Senior Corporate Counsel for North American Litigation at 55 Corporate Drive, Bridgewater, New Jersey 08807. Sanofi designated that same New Jersey address for notices under the Settlement Agreement. The Settlement Agreement is governed by the domestic law of the State of New Jersey and fixes Somerset County, New Jersey as the place for any mediation; Bridgewater lies in Somerset County. The agreement that Sanofi breached settled an action filed in this District.

34. Venue is also proper under 28 U.S.C. § 1391(c)(3) because Sanofi is not resident in the United States and may be sued in any judicial district.

35. Section X(G) of the Settlement Agreement provides that, in the event an action is required to enforce its terms, the parties "shall resolve those issues via mediation in Somerset County, New Jersey, to be administered by JAMS or a similar, professional alternative dispute organization." That provision is a mediation provision. It is not an agreement to arbitrate and it does not divest this Court of jurisdiction. It does not apply to the First and Second Claims for Relief, which do not seek to enforce the terms of the Settlement Agreement but ask the Court to declare that Section X(J) never validly came into existence and that the Settlement Agreement is rescinded. It does not apply to the Sixth through Fourteenth Claims for Relief, which do not seek to enforce the Settlement Agreement at all. It does not bind F. Christopher Austin or Philip Morisky, neither of whom is a party to the Settlement Agreement. MMAS Research is willing to mediate in Somerset County at any time and has always been so willing.

## FACTUAL ALLEGATIONS

### A. The Morisky Widget and the scoring and coding criteria

36. The Morisky Widget is proprietary software owned by MMAS Research and registered as the "MMAS Research WIDGET CODE" under Copyright Registration No. TX 8-816-517. The Morisky Widget administers, scores, codes and reports the Morisky Widget MMAS-8 and the Morisky Widget MMAS-4, in certified translations, and returns a banded adherence classification for each test taken.

37. The commercial value of the Morisky Widget lies in the scoring and coding criteria that it applies. Those criteria are not published by MMAS Research and are not released to licensees. They are licensed only as a function performed inside the Morisky Widget.

38. Every Morisky Widget license MMAS Research grants therefore requires that scoring and coding be performed in the Morisky Widget and nowhere else. The Morisky Widget MMAS License between MMAS Research and Sanofi-Aventis France of on or about 5 July 2017 (the "2017 Licensing Agreement") provides at Section F:

*"By special arrangement, Licensee will be allowed to manually administer any of the MMAS-8 tests by paper in perpetuity but all tests must be scored, coded and reported through the Morisky Widget."*

39. The Morisky Widget MMAS License made on 26 January 2018 between Kantar Health China on behalf of Sanofi China and MMAS Research (the "2018 China License") contains the same requirement at Sections I(F) and I(G), and states the trade-secret status of the criteria expressly at Section III(A):

*"TRADEMARK: MMAS CODING & SCORING criteria are trade secrets of Licensor and as such can NEVER be divulged in any publication, presentation, or website without written permission from Licensor."*

40. The same instrument, at Sections III(C) and III(E), requires every licensee to include the copyright and trademark requirements set out at its Appendix 1 "in all manuscripts, web postings or other publications containing Morisky Widget & MMAS results," and to submit every manuscript to MMAS Research before publication so that compliance can be verified.

41. MMAS Research takes reasonable measures to keep the scoring and coding criteria secret. It does not publish them. It does not supply them to licensees. It licenses only the use of the software that applies them, under written agreements that designate them as trade secrets and forbid their disclosure in any publication, presentation or website.

42. The scoring and coding criteria derive independent economic value from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from their disclosure or use. They are the reason a licensee pays for the Morisky Widget instead of scoring a questionnaire itself.

**B. The 2017 License, the 2021 Addendum and the EFC 16133 Study**

43. On 5 July 2017 Sanofi-Aventis France and MMAS Research entered into a Morisky Widget MMAS License (the "2017 Licensing Agreement"). Section F of that instrument provides: "By special arrangement, Licensee will be allowed to manually administer any of the MMAS-8 tests by paper in perpetuity but all tests must be scored, coded and reported through the Morisky Widget."

44. On 26 January 2018 a further Morisky Widget MMAS License was made for Sanofi China through Kantar Health China. Section III(A) of that instrument provides that the "MMAS CODING & SCORING criteria are trade secrets of Licensor and as such can NEVER be divulged in any publication, presentation, or website without written permission from Licensor."

45. In 2021 the parties executed an "Addendum to Morisky Widget MMAS License Agreement" (the "2021 Addendum"), expressed to be an addendum to the Morisky Widget MMAS

License made on 5 July 2017. Section 1 provides: "All of the terms and conditions of the License Agreement apply to this Addendum and its terms."

46. The 2021 Addendum names as Licensee "Sanofi Aventis France, located at 82 Avenue Raspail, 94250 Gentilly France," and as Licensor: "Dr. Donald E. Morisky, a resident of Nevada, USA, and MMAS Research LLC, located at 1501 Spring Hill Road, Petaluma, CA 94952, USA (collectively 'Licensor')." Donald E. Morisky is a named co-Licensor on the face of that instrument. Both he and Steven Trubow signed it on 2 July 2021. The signature block for Sanofi Aventis France bears no name, no signature and no date.

47. The 2021 Addendum grants a sub-license, for the study referenced as the EFC 16133 Study, to all affiliates of Sanofi Aventis France, to all clinical research organizations directed by it, and to any other third-party organizations directed by it.

48. Its recitals state that the EFC 16133 Study was to run "from 2021 to 2033, with the last MMAS-8 test being administered in 2029," and that the MMAS-8 was to be administered "once (1) each to 5,040 screened patients and eighteen (18) times each to 4,034 randomized patients, totaling 72,612 administered tests." Exhibit 1 lists fifty-eight country and language pairs. Those are the figures for which the parties contracted and against which Exhibit 2 was priced. Sanofi terminated the study in or about August 2022, and on information and belief fewer than two thousand MMAS-8 tests were in fact administered.

49. Section 3 requires that only investigators, clinicians and researchers trained and certified on the Morisky Widget may score and code MMAS tests in it. Section 5 requires MMAS Research to approve any electronic clinical outcome assessment screens used to administer the MMAS-8. Section 6 provides: "Licensee must score and code all MMAS tests in the Morisky Widget." Section 7 provides that MMAS Research will verify and certify all Morisky Widget MMAS-8 translations for the EFC 16133 Study.

50. Section 9 requires an annual fee of $7,000 for Amazon Europe Web Services to maintain the Morisky Widget website in Europe in compliance with the General Data Protection Regulation. Exhibit 2 prices six years of that service at $42,000 and states a total of $162,035 for the EFC 16133 Study.

51. Sanofi therefore held, from 2021, an instrument amending the very license later settled, on which Donald E. Morisky appears as a co-Licensor alongside MMAS Research. That instrument was in Sanofi's possession before Sanofi gave the warranty at Section VI(A) of the Settlement Agreement pleaded below.

**C. May 2021 to January 2022: Austin and Morisky turn Sanofi against its own Licensor**

52. On 19 May 2021 Donald E. Morisky emailed Sanofi under the heading "HIGH ALERT! Re: DO NOT DEAL WITH Steve Trubow," writing: "effective December 2020, Mr. Trubow and I settled legal matters. I have revoked his license to market my scales effective April 2020 and he is not authorized to make new business deals nor arrangements for my MMAS scales ... Please communicate only with me and my legal counsel who I copied, Esq. Chris Austin. Please do not entertain any communication from his lawyer, Peter Hoeller or Mr. Trubow."

53. On 25 May 2021 Austin wrote to Sanofi and withdrew that position in terms: "Dr. Morisky has subsequently learned that your request falls under the existing license Sanofi has with MMAS Research, LLC. Under the terms of an agreement MMAS Research has with Dr. Morisky, MMAS Research will provide the services and training you have requested."

54. On 21 January 2022 Donald E. Morisky wrote to Peter Hoeller, then counsel to both MMAS Research and Dr. Morisky, copying Austin: "Your fiduciary role requires that you consider both Sanofi and CR2A terms which have now collided. CR2A trumps Sanofi addendum and vests in me ownership of everything MMAS." He continued: "Magda/Sanofi is now asking for a refund of the $42k that was improperly remitted to Trubow ... Please remit that back to her."

55. The $42,000 is the six years of Amazon Europe Web Services priced at Exhibit 2 of the 2021 Addendum.

56. Mr. Hoeller replied the same day: "Where is the updated agreement with Sanofi that justifies this refund? The only Addendum I have seen requires Sanofi to score MMAS tests in the Morisky Widget that is hosted in AWS."

57. Austin replied the same day, to Mr. Hoeller and Dr. Morisky: "The CR2A is the only agreement. Because Trubow refused to proceed with the process as required to reach a Final Agreement he is estopped thwarting the entire purpose of the settlement (transferring all IP to Don in exchange for participating in revenue from settlements) by making the very argument you are making. If you have already wired the funds to Trubow, Sanofi will have to take it up with Trubow once you inform them of that."

58. On Monday 24 January 2022 at 8:18 a.m., Magdalena Potocka, "Vendor Manager, DOCS on behalf of Sanofi," writing from Magdalena.Potocka-ext@sanofi.com, emailed Dr. Morisky with Austin copied:

> *"Dear Dr. Morisky, Was Peter Hoeller informed that Morisky Widget will not be used? MMAS is not a party to the amendment to the contract that we are currently reviewing and I am not comfortable sharing contractual agreements with external parties."*

59. That message establishes three matters, each on Sanofi's own statement. First, Sanofi

had determined by January 2022 that the Morisky Widget would not be used, notwithstanding Section 6 of the 2021 Addendum and Section F of the 2017 Licensing Agreement. Second, Sanofi was then reviewing an amendment to its contract to which MMAS Research, a named Licensor under that contract, was not a party. Third, Sanofi classified MMAS Research as an "external party" with whom Sanofi was "not comfortable sharing contractual agreements."

60. The January 2022 message confirmed a course Sanofi had already set in August 2021, as pleaded in Section D of these allegations. From that election onward, and on information and belief, every MMAS-8 test administered in the EFC 16133 Study was scored and coded outside the Morisky Widget, in breach of Section 6 of the 2021 Addendum and Section F of the 2017 Licensing Agreement.

61. In September 2024, thirty-two months after telling MMAS Research nothing and refusing to share a contract with it as an external party, Sanofi sent MMAS Research's executed Settlement Agreement and its banking instructions to Dr. Morisky, who was a stranger to that agreement and the plaintiff in the Washington Action.

**D. The AMEERA-6 translations and the substitution of the copyright notice**

62. The EFC 16133 Study is the AMEERA-6 study. On 17 August 2021 Magdalena Potocka of Sanofi circulated the country list for it: twenty-nine confirmed countries and three back-up countries, 3,738 randomized patients and 642 sites, with the United States at 1,496 patients and 259 sites and Mainland China at 480 patients and 70 sites.

63. In the same message Sanofi stated: "MMAS-8 assessment in Ameera-6 will be used in eCOA. ERT is eCOA vendor selected for this study." ERT was acquired by Clario Corporation in or about November 2021. On 18 August 2021 Dr. Morisky wrote to Sanofi, copying Mr. Trubow and Mr. Hoeller: "As Sanofi has elected to use eCOA as the platform rather than the widget, we have condensed the training to one day."

64. Sanofi therefore elected, in August 2021, to administer and score the MMAS-8 in a third-party electronic clinical outcome assessment system rather than in the Morisky Widget, notwithstanding Section F of the 2017 Licensing Agreement and Section 6 of the 2021 Addendum.

65. On 27 July 2021 Dr. Morisky, MMAS Research and Mr. Trubow executed an "Agreement for Translation Services" (the "Translation Services Agreement"), signed by Mr. Trubow on 28 July 2021 and by Dr. Morisky on 29 July 2021. It provides at paragraph 1 that Mr. Trubow "has or will obtain ISO-17100 certified translations of the MMAS-8 test for the particular medication and medical condition" of the study in the 50+ languages, at paragraph 3 that Dr. Morisky "must approve the MMAS Translations before being uploaded," and at paragraph 8 that "[t]he MMAS Translations shall be deemed 'MMAS RESEARCH IP.'"

66. MMAS Research performed. It obtained ISO-certified translations of the breast-cancer MMAS-8, including English for Australia certified by Oxford Outcomes, Spanish for Chile certified by MAPI of Paris, and English for New Zealand certified by Translated s.r.l. of Rome under its Certification of Translation Accuracy dated 3 September 2021, project number 38686708. MMAS Research delivered them to Sanofi.

67. Sanofi confirmed receipt and integration. On 24 August 2021 Ms. Potocka wrote to Dr. Morisky: "In regards to translations, we previously received attached Spanish for Chile and English for Australia translations from Steve Trubow. They are in line with MMAS-8 breast cancer US English source version that Steve provided and that was integrated in eCOA design."

68. Each translation as prepared and delivered by MMAS Research bears at its foot the copyright management information of MMAS Research: "© Morisky Widget MMAS Software Registration TX 8-816-517."

69. On 25 August 2021 Dr. Morisky wrote to Ms. Potocka, copying Mr. Hoeller and Kenneth I. Gross: "Would you kindly forward to me the Australian and Chile translations and certificate of authenticity Steve sent you ... My review and approval of translations must take place first before Sanofi is authorized to use it." Sanofi complied and forwarded MMAS Research's translations to him.

70. Dr. Morisky then returned to Sanofi a version of the Spanish for Chile instrument that is, through all eight items and the introductory paragraph, word for word identical to the instrument MMAS Research had prepared, and that differs from it in one respect only: the copyright management information at the foot of the page had been removed and replaced with "© 2006 Donald E. Morisky."

71. MMAS Research did not authorize the removal or the replacement. Paragraph 8 of the Translation Services Agreement, which Dr. Morisky had signed twenty-seven days earlier, deems the MMAS Translations MMAS RESEARCH IP.

72. On information and belief, Sanofi knew of the substitution and consented to it. Sanofi had the MMAS Research original in its own files, had confirmed on 24 August 2021 that it had received that original from Mr. Trubow and had integrated it into the eCOA design, and had itself forwarded that original to Dr. Morisky at his request the following day. Sanofi thereafter distributed and used the altered instruments in the AMEERA-6 study.

73. The forms that Sanofi placed into the ERT eCOA carry no coding of any kind. Items 1 through 7 appear as bare Yes and No, and item 8 appears as five unnumbered labels. The reverse coding of item 5, the standardization of item 8 on a 0 to 4 scale divided by four, and the three adherence bands are not present on the instrument. Whatever adherence scores AMEERA-6 produced were therefore

generated by rules applied outside the Morisky Widget.

74. Sanofi terminated the AMEERA-6 study in or about August 2022. On information and belief, fewer than two thousand MMAS-8 tests were administered in it, all of them after Sanofi had elected in August 2021 to administer and score the MMAS-8 outside the Morisky Widget.

**E. The 2022 action in this Court and the Settlement Agreement**

75. On 29 June 2022 MMAS Research filed MMAS Research LLC v. Sanofi-Aventis France SA, Clario Corporation, F. Christopher Austin and Does 1–20, No. 3:22-cv-04339-ZNQ-DEA, in this Court (the "2022 Action"), pleading breach of contract against Sanofi, copyright infringement, and tortious interference with contract against Austin.

76. On 23 August 2024 MMAS Research LLC and Steven Trubow, together defined as "MMAS," and Sanofi Winthrop Industrie executed a Confidential Settlement Agreement and Release (the "Settlement Agreement"), signed for MMAS Research by Steven Trubow, Chief Executive Officer, and for Sanofi by Susan A. Manardo, Vice President Head of North American Litigation and Investigations.

77. Section I(B) defines "Settled Claims" as claims "existing now or arising in the future, by the Parties or their Affiliates relating to the 2017 Licensing Agreement and/or the ELIPRO study." The ELIPRO study is identified in the recitals as the Sanofi-sponsored study published on or about 26 July 2023 and titled "Patient reported outcomes of patients with Gaucher disease type 1 treated with eliglustat in real-world settings: The ELIPRO study."

78. Section II(A) fixes the consideration at $115,000. Section II(B) provides that upon signing, MMAS shall send wire instructions by email to Sanofi at matthew.sachs@sanofi.com and carrie.love@sanofi.com, and that "[w]ithin 90 days of receiving the wire instructions, SWI shall make the payment by wire transfer and notify MMAS that that the wire has been initiated via email."

79. Section V(A), headed "Settlement Terms," provides:

> *"The terms of this Settlement Agreement, and all correspondence relating to it, are confidential, and no Party shall now or hereafter disclose them to any third party except: (a) with the prior written consent of each Party, (b) as may be required by applicable law or order of a governmental authority of competent jurisdiction, (c) as deemed appropriate by either Party in connection with its financial reporting obligations, (d) in confidence to the professional legal and financial counsel and accounting professionals representing such Party, or (e) in confidence, under a written confidentiality agreement (with confidentiality terms and conditions no less restrictive than those set forth herein), to any party covered or potentially to be covered by the*

*releases granted herein, including, but not limited to the Supplemental Released Parties. With respect to the foregoing (b) and (c), such disclosing Party shall, to the extent legally permissible, provide the other Party with prior written notice of such Applicable Law or order and, at the written request of any other Party, use reasonable efforts to limit the disclosure of the terms and conditions of this Settlement Agreement, and to obtain a protective order or other confidential treatment..."*

80. Section V(B), headed "Public Statements, Non-Disparagement," provides:

*"No Party shall issue any press release or make any public statement regarding this Settlement Agreement without prior written consent of the other Party, except as a Party may deem necessary to satisfy a public reporting obligation. The Parties may make appropriate disclosures in their public filings with the SEC. Neither Party will disparage the other with respect to the subject matter of the Dispute."*

81. "The Dispute" is defined in the recitals as all claims, differences and controversies by and between MMAS and Sanofi that exist, have existed, or may exist in the future, involving or relating to the 2017 Licensing Agreement.

82. Section I(A) purports to define the Effective Date: "The term 'Effective Date' shall mean the later of either: the date of the signing of this Settlement Agreement." The definition names one alternative where its own words require two. Both signature blocks are dated 23 August 2024.

83. Section III(A) provides that MMAS Research's release of Sanofi is given "[s]ubject to and conditioned upon receipt by MMAS of the Payment." Section III(B), by which Sanofi releases MMAS Research, contains no such condition. From 23 August 2024 until the wire was sent, Sanofi stood released and MMAS Research did not.

84. Section VI(A), headed "Authority to Enter Agreement," provides that each Party "represents and warrants that it has the full right and power to enter this Settlement Agreement and, on behalf of itself and its Affiliates, has the full right and power to grant the rights, releases, and covenants as set forth herein, and that there are no other persons or entities whose consent to this Settlement Agreement or whose joinder herein is necessary to make fully effective the provisions of this Settlement Agreement."

85. Section X(A) provides that any rights not expressly granted in the Settlement Agreement are reserved. Section X(B) provides that no modification or amendment binds the Parties unless in writing signed by their authorized representatives. Section X(F) provides that if any provision is found invalid or unenforceable, the remainder of the agreement remains valid and enforceable to the greatest extent allowed.

86. Section X(C) provides that the Settlement Agreement is governed by and construed in accordance with the domestic law of the State of New Jersey. Section X(G) provides for mediation in Somerset County, New Jersey and entitles the prevailing party in any enforcement action to recover its actual damages, reasonable attorneys' fees and costs. Section VIII(B) designates, for notices to Sanofi: "Matthew Sachs, Sanofi-Aventis, 55 Corporate Drive, Bridgewater, NJ 08807."

**F. Sanofi sends the executed agreement and the wiring instructions to Dr. Donald E. Morisky**

87. At all material times Donald E. Morisky was the plaintiff, and MMAS Research and Steven Trubow were defendants, in Donald E. Morisky v. MMAS Research LLC et al., No. 2:21-cv-01301-RSM-DWC, in the United States District Court for the Western District of Washington at Seattle (the "Washington Action").

88. On Thursday 19 September 2024 at 6:39 a.m., Tatiana Chuvashova, writing from Tatiana.Chuvashova-ext@sanofi.com and identifying herself as "Expert Master Data eVendor & eProc, Sanofi Business Services France," 14 Espace Henri Vallée, 69007 Lyon, sent an email to dmorisky@g.ucla.edu under the subject line "2298300 MMAS RESEARCH LLC Bank detail confirmation":

> *"Dear vendor, We have received this agreement and bank details (please, refer to attached documents). We already have un account for your company in our database, but with different address and bank details ... Please, confirm us if we can update this information as mentioned in attached wire instructions. Thank you in advance for your confirmation."*

89. Two documents were attached to that email. They are identified on the face of the message as "Wire Instructions.pdf" and "Sanofi-MMAS Executed Agreement.pdf."

90. Sanofi thereby delivered the executed Confidential Settlement Agreement and MMAS Research's banking instructions to Dr. Donald E. Morisky, at his university email address, twenty-seven days after the agreement was signed. MMAS Research did not consent to that disclosure, was not notified of it, and did not learn of it until the email was filed on a public docket in June 2025.

91. At 6:58 a.m. the same morning Dr. Morisky forwarded the message and its attachments to philip.morisky@moriskyscale.com with the words "Philip, please respond." At 8:28 a.m. he forwarded it again, from donald.morisky@moriskyscale.com, to philip.morisky@adherence.cc.

**G. Philip Morisky and Austin open a channel to Sanofi's counsel**

92. On 19 September 2024 at 8:38 a.m., under the same subject line and marked "CONFIDENTIAL," Philip Morisky wrote to Matthew Sachs and Carrie Love, copying F. Christopher Austin:

*"There is currently a Federal copyright case in the state of Washington. 2:2021cv01301 Morisky v MMAS Research et al. We allege that Trubow does not own any rights to the MMAS-4 and MMAS-8 scales and that the 'widget' is illegally hosting the MMAS scales. We have filed an infringement case in 2019. I have included our attorney Chris Austin to comment. I am unsure if SANOFI was aware of this but any settlement for alleged use of the actual MMAS Morisky questionnaire can only be authorized by my father Dr Donald Morisky and myself as the company responsible for the rights of the MMAS. Please put my attorney and myself in touch with the legal representative who is authorizing this."*

93. From that moment Sanofi knew the identity of the case, its number, the court, that MMAS Research was the defendant in it, that Austin was counsel for the plaintiff, and that the persons writing to it were adverse to MMAS Research.

94. On 20 September 2024 at 7:07 a.m. Matthew Sachs replied:

*"Thanks, Philip. All I can say at this time is that, based on your recent emails, we are taking another very close look at this matter and the settlement agreement to determine the appropriate course of action for Sanofi. We'll be in touch once we've figured everything out."*

95. Sanofi thereby told two persons adverse to MMAS Research, in writing, that it was reconsidering an executed settlement agreement with MMAS Research because of what they had told it about MMAS Research's ownership. Sanofi did not correct their assertions. Sanofi did not tell them that the Settlement Agreement was confidential. Sanofi did not tell them that Section V(A) forbade the discussion. Sanofi did not tell MMAS Research that the exchange had occurred.

96. On 20 September 2024 at 9:52 a.m. Philip Morisky wrote again, this time to Sachs, Love and Susan A. Manardo — the officer who had signed the Settlement Agreement for Sanofi — copying Austin. He wrote, among other things:

*"My father is nearly 80 years old and he is no longer involved with the day-to-day oversight of the MMAS use, which is now my sole responsibility."*

*"The original Sanofi license included Dr Donald Morisky as an individual. Why now does this settlement not even mention his name? Sanofi was aware of the tensions and ultimate separation between Dr Morisky and Trubow even during the initial discussions of the global license for the Elipro study."*

*"Please understand that we have been fighting this court case for several years and hundreds of thousands of dollars in court costs and millions in stolen revenue, as well*

*as the negative visibility of using the scales in themselves and the association with this individual."*

*"The published article only mentions the MMAS-8, I don't even see where this widget would be used."*

*"I have established global collaborations with Servier, Janssen, Novo, Eli Lilly and others in order to take back control of the MMAS and ensure that proper licensing protocol is followed, and our collaborations are harmonious. I hope to establish this same connection with Sanofi."*

*"I look for your response today so that we can plan our next course of action. This settlement agreement needs to be stopped and investigated. Sanofi already paid way too much for services that were not even needed or used."*

**H. The dossier**

97. On 8 October 2024 at 3:08 p.m. Sachs wrote to Philip Morisky, copying Love, Manardo and Austin: "Thanks for sending (and Chris thanks for sending in your other email). We will review and discuss internally."

98. That message records two things. Sanofi had received material from Philip Morisky, and Sanofi had separately received material from Austin, and Sanofi was taking both into its internal deliberations.

99. On 8 October 2024 at 5:19 p.m. Philip Morisky replied:

*"Here is the motion to dismiss for the Boston case. I did not see the Sanofi draft that Trubow threatened if you don't mind sharing it. Thanks for the reassurance that you will keep us updated."*

100. On 26 November 2024 at 4:03 p.m. Philip Morisky wrote to Sachs, Love and Manardo, copying Austin:

*"Hi Matthew, I am checking in to see if Sanofi has made any decision on the Trubow matters. I am attaching recent motions in the Boston case as well as additional sanctions in the Washington case which will ultimately prove that Trubow does not own any rights to the MMAS and the widget and that any settlements regarding the MMAS must go through our party. I believe that December 16 is the 90 days, so please let me know prior to."*

101. Philip Morisky was therefore collecting litigation papers filed against MMAS Research in two federal courts and transmitting them to a licensee of MMAS Research, for the declared purpose of proving to that licensee that MMAS Research "does not own any rights to the MMAS and the

widget."

102. A motion to dismiss is an adversary's argument. Motions are argument. Neither is an adjudication of anything, and no court has held that MMAS Research does not own the Morisky Widget. On the contrary, the United States Court of Appeals for the Ninth Circuit held on 13 March 2024 that MMAS Research "never transferred its copyright and remains the registered owner of the Morisky Widget."

103. Philip Morisky's statement that the papers he was sending "will ultimately prove that Trubow does not own any rights to the MMAS and the widget" was false when made and he knew it was false, or made it in reckless disregard of its falsity.

104. The reference in the 26 November 2024 message to "December 16" is a reference to the ninety-day payment period fixed by Section II(B) of the Settlement Agreement. That period is a confidential term of a confidential agreement. Philip Morisky knew of it, had calculated its expiry, and was pressing Sanofi for a decision before it ran.

105. The "Boston case" is MMAS Research LLC et al. v. The Children's Hospital Corporation et al., No. 24-12108-DJC, in the United States District Court for the District of Massachusetts. The motion to dismiss Philip Morisky sent to Sanofi on 8 October 2024 was filed on behalf of Dr. Donald E. Morisky and Morisky Medication Adherence Research, LLC, by Austin, who appeared in that action as their counsel.

106. On 23 October 2025 the Honorable Denise J. Casper heard argument on that motion. Austin appeared for Dr. Morisky and for MMAR. The certified transcript is the record of what the papers Philip Morisky had sent to Sanofi were actually worth, and of what Austin said the April 2022 letter meant.

107. Austin admitted authorship and instruction: "the letter that was -- I wrote, at the direction of my clients."

108. Austin told the Court what the letter told its recipients:

> *"It is our position ... that Dr. Morisky is the sole and exclusive owner of the MMAS-8, and if you purport to use it, even if it is licensed to you by somebody else, you will be in violation of Dr. Morisky's sole and exclusive rights to that copyright and subject yourself to potential copyright infringement action."*

109. Austin told the Court that none of the recipients had been identified as an infringer: "When that letter was sent out, there was nobody we knew or had identified who was currently infringing amongst the colleagues. It was to put them on notice and inform them of the status of this litigation."

110. Austin told the Court that the letter went out "as part of a bulk email to the colleagues of a list of contacts that Dr. Morisky provided," and that "in almost all cases, Dr. Morisky was also a part of those licenses ... So in every one of those cases, those licensees are also Dr. Morisky's licensees."

111. In the same hearing Austin told the Court that Dr. Morisky "has had nothing to do whatsoever with any of the contacts," that he "neither wrote the letter, he didn't send the letter, nor did he send the email," that he is "completely retired," and that he "is suffering from Alzheimer's." Austin identified Philip Morisky as MMAR's principal officer and as the person who made the contacts.

112. Those statements bear directly on this action in three ways. First, the papers Philip Morisky sent to Sanofi in October and November 2024 as material that "will ultimately prove that Trubow does not own any rights to the MMAS and the widget" were a motion to dismiss for want of personal jurisdiction, argued a year later and resolved on no question of ownership at all. Second, Austin's account of the April 2022 letter is the same message Philip Morisky and Austin delivered to Sanofi in September 2024: that a licensee's existing license from MMAS Research affords it no protection. Third, Austin's statement that Dr. Morisky supplied the list of contacts, and that Dr. Morisky signed the licenses held by the people on it, cannot be reconciled with his statement in the same hearing that Dr. Morisky had nothing to do with any of the contacts.

113. On information and belief, the motion to dismiss transmitted to Sanofi on 8 October 2024 is the motion argued on 23 October 2025, and the "recent motions in the Boston case" transmitted on 26 November 2024 are filings in the same action.

114. MMAS Research was not a recipient of any message in that thread. It was not told the thread existed. It did not consent, in writing or at all, to any disclosure to Philip Morisky or to Austin.

**I. The Addendum of 3 and 7 December 2024**

115. The Addendum recites that the Settlement Agreement is "effective September 17, 2024," and its sole recital of fact states: "WHEREAS, on September 17, 2024, the parties entered into the Settlement Agreement." Both signature blocks on the Settlement Agreement are dated 23 August 2024. No document in the possession of MMAS Research identifies any event of 17 September 2024, which is two days before Sanofi transmitted the executed agreement and the wiring instructions to Dr. Morisky.

116. The Addendum's operative clause reads: "NOW, THEREFORE, on consideration of the above Recitations, which are hereby acknowledged to be true and correct and made part of this Addendum, it is agreed that the below indemnification clause is added to the Section X of the Settlement Agreement as follows." The only consideration the instrument recites is its own Recitations.

117. The Addendum provides no payment to MMAS Research, extends no right to MMAS Research, releases MMAS Research from no obligation, and contains no covenant by Sanofi of any kind. MMAS Research received nothing for Section X(J).

118. Section X(J) obliges MMAS Research to indemnify and hold Sanofi harmless against any and all claims by five named individuals, by Morisky Medication Adherence Research LLC, and by all of their successors, agents, licensees and affiliates, "regarding use of the Morisky Widget in any manner," with Sanofi controlling the defense and the resolution. It contains no cap, no notice requirement, no duty to mitigate, no consent right over settlement and no expiry.

119. Under Section II(B) Sanofi had ninety days from receipt of the wiring instructions in which to pay. On 26 November 2024 Philip Morisky wrote to Sachs, Love and Manardo: "I believe that December 16 is the 90 days, so please let me know prior to." Ms. Manardo signed the Addendum on 3 December 2024 and Mr. Trubow signed it on 7 December 2024. The Addendum was therefore executed within the payment window, while Sanofi held the $115,000 and while MMAS Research's own release remained conditional on receiving it.

120. When Sanofi proposed and obtained the Addendum it knew, and did not disclose to MMAS Research, that it had transmitted the executed Settlement Agreement and the wiring instructions to Dr. Morisky on 19 September 2024; that Philip Morisky and Austin had since asserted to it that MMAS Research owned nothing and that only they could authorize a settlement; that it had written to them on 20 September 2024 that it was "taking another very close look at this matter and the settlement agreement to determine the appropriate course of action for Sanofi"; and that it had told them on 8 October 2024 that it would "review and discuss internally."

121. Sanofi also knew, and did not disclose, that Donald E. Morisky was a named co-Licensor on the 2021 Addendum in its own files; that Dr. Morisky had asserted ownership to Sanofi as early as 19 May 2021; that Austin had withdrawn that assertion in writing on 25 May 2021 and revived it in January 2022; and that Sanofi had itself, in January 2022, reviewed an amendment to the license with Dr. Morisky and Austin from which MMAS Research was excluded.

122. Had Sanofi disclosed any of those matters, MMAS Research would not have executed the Addendum.

123. MMAS Research first learned of the disclosures of 19 September 2024 and of the correspondence and call that followed when the declarations at Docket Entries 275 and 276 were filed in the Washington Action on 6 June 2025.

124. On 3 December 2024 Susan A. Manardo signed, and on 7 December 2024 Steven Trubow signed, an "Addendum to SAF Confidential Settlement Agreement" made under Section X(B)

of the Settlement Agreement. It adds a single clause:

> *"J. Indemnification. MMAS and its successors agree to indemnify and hold SWI harmless against any and all claims asserted by Donald E. Morisky, Philip Morisky, Marty Morisky, Susan Morisky, Morisky Medication Adherence Research, LLC ("MMAR LLC") (collectively "Morisky"), or any successors, agents or licensees of Donald E. Morisky, Philip Morisky, Marty Morisky, Susan Morisky, MMAR LLC or its Affiliates, regarding use of the Morisky Widget in any manner. In the event that a Morisky Claim is asserted against SWI, Sanofi shall control the defense and resolution of the Morisky Claim and SWI shall have the right but not the obligation to hire counsel of its choice."*

125. Sanofi asked MMAS Research to assume the risk of claims by Donald E. Morisky and Philip Morisky at a time when, unknown to MMAS Research, Sanofi had been in a running correspondence with Philip Morisky and with Dr. Morisky's litigation counsel for more than two months; had been told by them that MMAS Research owned nothing and that any settlement had to go through them; had been sent their litigation papers from two federal cases; had been told that Sanofi had "already paid way too much"; had been asked to stop the settlement; and had told them it was taking "another very close look at this matter and the settlement agreement."

126. Sanofi disclosed none of that to MMAS Research before, at, or after the execution of the Addendum.

127. Had MMAS Research known of that correspondence it would not have executed the Addendum on the terms presented, or at all.

**J. The 11 December 2024 call**

128. On 9 December 2024 at 6:59 p.m. Philip Morisky wrote to Sachs, Love and Manardo, copying Austin:

> *"Hi Matthew, I haven't heard anything in a while, I know next week on the 16th or 17th is the 90 days. So, I need to confirm what decision Sanofi made regarding any payment and then we can also discuss a formal release from me regarding the use of the MMAS-8, but I also need to know more information about the original settlement in the first place."*

129. Sanofi did not decline that request. Sachs replied the same day: "Hi Philip, I was actually going to email you this evening. Can you send Carrie and me some times this week that work for you for a brief call?" Scheduling messages passed on 10 and 11 December 2024 and a call was set.

130. On 11 December 2024 Matthew Sachs and Carrie Sarhangi Love joined a telephone call

with F. Christopher Austin and Philip Morisky.

131. Austin has sworn: "On December 11, 2024, I participated in a phone call with attorneys Carrie Sarhangi Love and Matthew Sachs, both representing Sanofi. Philip Morisky was also present." And: "During that call, Ms. Love and Mr. Sachs unequivocally confirmed that Sanofi had successfully transmitted a wire transfer in the amount of $115,000 to MMAS Research LLC, in accordance with the settlement agreement and the provided wiring instructions."

132. Philip Morisky has sworn: "During that conversation, Sanofi's counsel unequivocally confirmed that Sanofi had transmitted a wire payment in the amount of $115,000 to MMAS Research LLC. That representation was made in reference to the settlement agreement and the bank account wiring instructions that had been circulated."

**K. The use to which the disclosure was put**

133. On 5 June 2025 at 10:00:58 p.m. Mountain Daylight Time, Austin wrote to Love and Sachs, addressing Philip Morisky as a recipient: "This email confirms that in our phone conversation shortly after your email below scheduling it, you both confirmed that the $115,000 from Sanofi was successfully wired to MMAS Research LLC, as set forth in the attached settlement agreement and as intended by the attached wiring instructions." The Settlement Agreement and the wiring instructions were attached to that email.

134. On 6 June 2025 Austin filed in the Washington Action a declaration under 28 U.S.C. § 1746 at Docket 275, attaching that entire email thread as Exhibit 1. On the same day Philip Morisky filed his own declaration at Docket 276, attaching the same exhibit and swearing that it is a true and correct copy.

135. Both declarations were filed in support of the plaintiff's objections to a Report and Recommendation, on a dispositive motion to sanction MMAS Research and Steven Trubow out of the Washington Action.

136. Austin's declaration states the purpose expressly: "In its Report and Recommendation, the Court observed that the record did not conclusively establish whether Defendant Trubow actually received the $115,000. Because neither I nor my client was the sender or recipient of that wire, we did not possess third-party banking records. However, Sanofi's counsel — attorneys of record for a major pharmaceutical company — expressly confirmed that the wire was completed. That confirmation was witnessed by both me and Mr. Morisky."

137. The confidential term Sanofi disclosed was therefore the evidence the plaintiff needed, and could obtain nowhere else, to advance a motion whose object was to terminate MMAS Research and Mr. Trubow from the Washington Action.

138. In the current round of the Washington Action the plaintiff seeks $4.5 million in damages from MMAS Research and Mr. Trubow.

139. The same two declarations that carried Sanofi's confirmation onto the public docket also carried the following. Austin swore that MMAS Research and Mr. Trubow "have not only received substantial unaccounted funds (including over $700,000), but have also acted in bad faith in representing their financial condition." Philip Morisky swore that he "currently serve[s] as a principal officer of Adherence, the exclusive licensee of the MMAS-4 and MMAS-8 instruments."

140. And the exhibit both men attached placed on the public record Sanofi's own written statement that, "based on your recent emails, we are taking another very close look at this matter and the settlement agreement to determine the appropriate course of action for Sanofi," sitting immediately beneath Philip Morisky's assertions that MMAS Research owned nothing and had taken millions in stolen revenue, and unanswered by Sanofi.

141. The Settlement Agreement, its amount, MMAS Research's banking instructions, and Sanofi's statement that it was reconsidering the settlement are now permanently available to any person who searches the docket of the Washington Action, including every existing licensee, prospective licensee, counterparty and adversary of MMAS Research.

142. Sanofi is not a party to the Washington Action. No court ordered Sanofi, Austin or Philip Morisky to disclose the Settlement Agreement, its terms, the payment or the wiring instructions. No subpoena compelled it. No protective order was sought. Sanofi gave MMAS Research no prior written notice of any disclosure, made no effort to limit any disclosure, and made no effort to obtain a protective order or other confidential treatment.

143. None of the five exceptions in Section V(A) applies. There was no prior written consent of MMAS Research under (a). No applicable law or order of a governmental authority required the disclosures under (b). No financial reporting obligation was involved under (c). Neither Austin nor Philip Morisky is professional legal, financial or accounting counsel representing Sanofi under (d). Neither is a party covered or potentially covered by the releases, and neither executed a written confidentiality agreement, under (e).

**L. Special damages**

144. As a direct and proximate result of the acts alleged, MMAS Research has sustained, and continues to sustain, pecuniary loss, particularized as follows.

(a) The attorneys' fees and costs incurred by MMAS Research and Mr. Trubow in responding to the objections supported by the two declarations of 6 June 2025, and in defending the dispositive sanctions proceeding those objections sought to revive.

(b) The exposure created and advanced by that evidence in the Washington Action, in which the plaintiff seeks $4.5 million from MMAS Research and Mr. Trubow, and in which the alternative relief sought is the termination of MMAS Research and Mr. Trubow from the case.

(c) The loss of the confidentiality for which MMAS Research bargained and gave consideration, which cannot be restored, and the value of that confidentiality in MMAS Research's negotiations with other licensees and counterparties.

(d) The impairment of MMAS Research's licensing relationships, existing and prospective, caused by the availability on a public docket of Sanofi's statement that it was reconsidering its settlement with MMAS Research, published alongside assertions that MMAS Research owns nothing and has taken millions in stolen revenue.

(e) The loss of the benefit of the bargain in the Addendum, procured while Sanofi concealed the correspondence described above.

**M. The Czech teriflunomide study**

145. After the Settlement Agreement was executed, MMAS Research learned of a second Sanofi-sponsored study using the MMAS-8: Štrosová D, Tužil J, Turková BV, Pilnáčková BF, de Souza LL, Doležalová H, Rašková M, Dufek M, Doležal T. "Relationship between Patient Preferences, Attitudes to Treatment, Adherence, and Quality of Life in New Users of Teriflunomide." Pharmaceuticals 2022;15:1248, DOI 10.3390/ph15101248, published 11 October 2022 (the "Teriflunomide Publication").

146. The third listed affiliation on that publication is "Sanofi, Evropská 846/176a, 16000 Prague, Czech Republic," carried by the author Michaela Rašková. The Funding statement reads: "Sanofi funded the study and the preparation of this manuscript (TERIFL08851)."

147. The Conflicts of Interest statement reads, in part: "D.Š., J.T., B.V.T., B.F.P., L.L.d.S. and H.D. are employees of Value Outcomes; T.D. is the owner of Value Outcomes, a consultancy company that designed, conducted, and analyzed the study on behalf of Sanofi. Value Outcomes was contracted to prepare this manuscript. M.R. is a Sanofi employee and may hold shares and/or stock options in the company. Sanofi contracted M.D. in the role of study coordinator." The Author Contributions statement records that "M.R. was the sponsor clinical advisor for the final report and manuscript preparation."

148. The study was a single-arm, non-interventional, multicenter study conducted at ten hospital sites in the Czech Republic. Patients were enrolled between 2018 and 2019. One hundred and fourteen patients were enrolled, 105 were per-protocol, and the analysis of the primary objective was performed on 82 patients.

149. The adherence measure used in that study was the MMAS-8. Section 4.3 of the Teriflunomide Publication states: "For the medication adherence, the Morisky Medication Adherence Scale was used (MMAS-8; 0 to 8; higher values indicate a better adherence; categorization: high (MMAS-8 = 8), medium (MMAS-8 > 6), and low (MMAS-8 ≤ 6))."

150. That sentence publishes the Morisky Widget MMAS-8 scoring and coding criteria. The three bands it states — high at a score of 8, medium above 6, and low at 6 or below — are the banding architecture that the Morisky Widget applies and that the 2018 China License designates in terms as a trade secret that "can NEVER be divulged in any publication, presentation, or website without written permission from Licensor."

151. The Teriflunomide Publication then reports results in those bands: 63.3 per cent of patients at high adherence, 21.2 per cent at medium adherence and 15.4 per cent at low adherence at nine months. Its Table 2 is an ordinal logistic regression predicting the MMAS-8 adherence category in 82 patients.

152. The Teriflunomide Publication cites the MMAS-8 to a single third-party psychometric paper, De las Cuevas C, Peñate W, "Psychometric properties of the eight-item Morisky Medication Adherence Scale (MMAS-8) in a psychiatric outpatient setting," Int J Clin Health Psychol 2015;15:121–129. Its reference list contains no work by Dr. Donald E. Morisky. It contains no reference to MMAS Research. It carries no attribution to MMAS Research, no copyright notice, and no statement of any license or permission.

153. On information and belief, MMAS Research granted no license and no permission for the use of the MMAS-8, or of any translation of it, in the Teriflunomide Publication or in the study it reports.

154. On information and belief, the MMAS-8 tests administered in that study were not scored, coded or reported through the Morisky Widget, as every Sanofi license from MMAS Research requires; and no manuscript was submitted to MMAS Research before publication, as Section III(E) of the 2018 China License requires of a Sanofi licensee.

155. On information and belief, Value Outcomes Organization CZ — the consultancy that, in Sanofi's own words, "designed, conducted, and analyzed the study on behalf of Sanofi" and was "contracted to prepare this manuscript" — appears at page 33 of Exhibit 4 to the CR2A of 4 December 2020 as a Morisky Widget licensee, and is a related entity of Value Outcomes Ltd., Václavská 316/12, Prague, the first listed affiliation on the Teriflunomide Publication.

156. The Teriflunomide Publication is not the ELIPRO study. It reports a different medicine, a different disease, a different country, different sites, a different sponsor affiliate and a different period.

On information and belief it was not conducted under the 2017 Licensing Agreement. It therefore falls outside the definition of "Settled Claims" in Section I(B), and neither the releases at Section III nor the waiver of California Civil Code § 1542 at Section III(C) reaches it.

157. The breaches of Section V(A) and Section V(B), the conduct surrounding the Addendum, and the interference, trade libel and defamation by Austin and Philip Morisky all occurred after the Settlement Agreement was executed, do not relate to the 2017 Licensing Agreement and do not relate to the ELIPRO study. They are not Settled Claims.

**THE COMMERCIAL CHARACTER OF THE STATEMENTS PLEADED**

158. Each statement pleaded in this Complaint as a breach of a non-disparagement covenant, as trade libel or as a defamation was a commercial communication made by a seller of goods and services, to a purchaser of those goods and services, about those goods and services, and about who was entitled to license them.

159. Dr. Donald E. Morisky, Philip Morisky, Morisky Medication Adherence Research, LLC and Adherence are, and at all material times were, primarily engaged in the business of selling and licensing the MMAS-4, the MMAS-8 and permissions to use them. That is the business from which they derive their revenue, and it is the business in which every statement pleaded here was made.

160. F. Christopher Austin made the statements pleaded against him as counsel to and agent of those persons and in furtherance of that business. He offered Sanofi a formal release and a replacement license in respect of the MMAS-8 from an entity other than MMAS Research. A person who offers a competing license to a customer is engaged in that customer's market.

161. Sanofi Winthrop Industrie and its predecessor were at all material times actual and prospective purchasers of licenses to the MMAS-8, having licensed the instrument from MMAS Research on or about 5 July 2017 and having extended that license to Sanofi China on 26 January 2018.

162. Every statement pleaded was made in private written correspondence addressed to Sanofi and to its named employees and counsel, or to institutional licensees. None was published to the general public. None was made on an issue under consideration in any legislative, executive, judicial or administrative proceeding. None concerned a matter of public concern. Each concerned title to a commercial product and the identity of the person entitled to sell it.

163. Each statement arises directly out of the sale and licensing of those goods and services. Each was made for the purpose of moving a purchaser from one licensor to another, and each was followed by an offer of a substitute license from the speaker or the speaker's principal.

164. The New Jersey Uniform Public Expression Protection Act, N.J.S.A. 2A:53A-47 to -54, does not apply to any Claim for Relief pleaded in this Complaint. Section 2A:53A-50 provides that

the Act does not apply to a cause of action asserted against a person primarily engaged in the business of selling or leasing goods or services where the cause of action arises out of a communication related to that person's sale or lease of the goods or services. Each Claim for Relief pleaded here that concerns a communication falls within that exemption. No Claim for Relief pleaded here is based upon a communication in a governmental proceeding, upon a communication on an issue under consideration in such a proceeding, or upon the exercise of a right of free speech, assembly, petition or association on a matter of public concern.

165. Further and in the alternative, each statement was false when made and was contradicted in writing by the speakers themselves. In 2017 Dr. Morisky wrote to licensees that Mr. Trubow was his Chief Investigator and directed them to him for retroactive licenses. On 27 May 2021, eight days after the "DO NOT DEAL WITH Steve Trubow" message, counsel for Dr. Morisky confirmed to Sanofi that its request "falls under the existing license Sanofi has with MMAS Research, LLC."

**THE CR2A IS THE GOVERNING INSTRUMENT ACROSS BOTH PERIODS**

166. The CR2A Settlement Agreement of 4 December 2020 governs the subject matter of both periods pleaded in this Complaint and binds the same persons throughout.

167. It fixes title. Exhibit 1 to the CR2A identifies the registered works, including the MMAS-4 under Registration No. TX0008285390 and the MMAS-8 under Registration No. TX0008632533. Exhibit 4 identifies the institutional licensee base.

168. It contains the covenant. Section II, paragraph 14 provides that "[e]ach Party covenants and agrees to not make any public defamatory statement about any party to this Agreement." It was executed by Dr. Donald E. Morisky, Susan Morisky, Philip Morisky and Marty Morisky, and by Morisky Medication Adherence Research, LLC by Philip Morisky as its Managing Member.

169. The instruments pleaded in Part Two incorporate it. Paragraph 8 of the Agreement for Translation Services of 27 July 2021 provides that the MMAS Translations "shall be deemed 'MMAS RESEARCH IP' and subject to the disposition of MMAS RESEARCH IP under the terms of the CR 2A Agreement between the Parties." Dr. Morisky signed that agreement on 29 July 2021, twenty-seven days before the substitution of copyright management information pleaded below.

170. And the Defendants themselves invoked it to the Defendant Sanofi. On 21 January 2022 Dr. Morisky wrote that the "CR2A trumps Sanofi addendum and vests in me ownership of everything MMAS," and on that footing directed the return of funds Sanofi had paid. Having claimed the benefit of the agreement, the Morisky Defendants are bound by its covenants.

171. The joint Representation Agreement is itself keyed to the CR2A. Its subject is identified as "[s]pecific claims this firm agrees to handle from the list set forth in Exhibit 3 to the CR2A attached

hereto as Exhibit A." The CR2A is attached to and incorporated in the retainer under which the MMAS claims were to be prosecuted for Dr. Morisky and MMAS Research jointly.

172. F. Christopher Austin did not merely know of these instruments. He wrote them. Mr. Austin and Kenneth I. Gross drafted the CR2A, the Representation Agreements by which Dr. Morisky and MMAS Research were jointly retained to counsel, and the Infringement Authorization Agreement under which the MMAS infringement claims were to be pursued. Mr. Austin is the author of the non-disparagement covenant at Section II, paragraph 14, of the joint-client definition naming MMAS Research, and of the allocation of the costs and proceeds of enforcement between Dr. Morisky and MMAS Research.

173. Knowledge of a contract is an element of tortious interference with it. Here that element is established by authorship. When Mr. Austin dealt with Sanofi in January 2022 and again in September 2024 to remove MMAS Research from the licensing relationship and to install a Morisky entity in its place, he was acting against the terms of instruments he had himself drafted, for parties he had himself defined, in a program of enforcement he had himself papered.

174. F. Christopher Austin knew of that relationship. He appeared as counsel of record for Dr. Morisky in the Washington action, in which the CR2A and the MMAS claims are the subject matter. When he dealt with Sanofi in January 2022 and again in September 2024 to remove MMAS Research from the licensing relationship and to install a Morisky entity in its place, he did so with knowledge of a written joint retainer in which MMAS Research held a fifty-five per cent cost obligation and a contractual interest in any recovery on the MMAS claims.

175. The claims pleaded in Parts One, Two and Three accordingly arise out of the same series of transactions and occurrences, governed by a common written instrument, among a common set of parties, and present questions of law and fact common to all Defendants within the meaning of Federal Rule of Civil Procedure 20(a)(2).

## PART ONE

## THE SETTLEMENT AGREEMENT AND ITS BREACH — 2024 TO 2025

## <u>FIRST CLAIM FOR RELIEF</u>

## BREACH OF CONTRACT — SECTION V(A), CONFIDENTIALITY

**(Against Sanofi)**

176. MMAS Research repeats and incorporates each of the foregoing paragraphs.

177. The Settlement Agreement is a valid and enforceable contract between MMAS Research and Sanofi, governed by the law of New Jersey, and MMAS Research performed all of its obligations under it.

178. Section V(A) obliged Sanofi not to disclose the terms of the Settlement Agreement, or any correspondence relating to it, to any third party except in the five defined circumstances.

179. Sanofi breached that obligation on 19 September 2024 by transmitting the executed Settlement Agreement and MMAS Research's wiring instructions to Dr. Donald E. Morisky.

180. Sanofi breached it again in its written exchanges with Philip Morisky and F. Christopher Austin between 20 September 2024 and 11 December 2024, and orally on the call of 11 December 2024. The matter disclosed included the existence of the Settlement Agreement, the ninety-day payment obligation under Section II(B), the amount of $115,000, the fact that the payment had been made, the existence and content of MMAS Research's wiring instructions, and Sanofi's own deliberations about the agreement.

181. No exception in Section V(A) applies to any of those disclosures. Sanofi gave MMAS Research no prior written notice, made no effort to limit the disclosures, and sought no protective order.

182. As a direct and proximate result MMAS Research has been damaged, including in the respects particularized at Section L above.

183. MMAS Research is entitled to its actual damages and, under Section X(G), to its reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

## RESCISSION AND DECLARATORY RELIEF — THE ADDENDUM OF 3 AND 7 DECEMBER 2024 AND SECTION X(J)

**(Against Sanofi)**

184. MMAS Research repeats and incorporates each of the foregoing paragraphs.

185. This Claim for Relief is pleaded on four independent grounds, each in the alternative to the others. MMAS Research pleads each of them to the standard of clear and convincing proof.

186. First ground — want of consideration. The Addendum recites consideration only for its own Recitations. It confers nothing on MMAS Research. Sanofi promised nothing it was not already bound to do, its obligation to pay the $115,000 having arisen under Section II(A) and Section II(B) of the Settlement Agreement more than three months earlier. Under the law of New Jersey an agreement to modify an existing contract must be supported by new or additional consideration, and a promise to perform a pre-existing duty is not consideration. Section X(J) is void for want of consideration.

187. Second ground — economic duress. When Sanofi proposed the Addendum it held the $115,000, the ninety-day period under Section II(B) had not expired, MMAS Research's own release under Section III(A) remained conditional upon receipt of that payment while Sanofi's release under Section III(B) was unconditional, and Sanofi had already written to persons adverse to MMAS

Research that it was reconsidering "the appropriate course of action for Sanofi" without disclosing that fact to MMAS Research. Sanofi created and controlled the pressure it then applied. The exchange it obtained was something for nothing. The pressure was wrongful in a moral and equitable sense and deprived MMAS Research of its unfettered will.

188. Third ground — equitable fraud and concealment. Sanofi concealed from MMAS Research every matter pleaded in Section I above at the time it sought MMAS Research's signature, while proposing an amendment whose entire subject was claims by the very persons with whom Sanofi was corresponding. The concealed matters were material. MMAS Research relied on their absence to its detriment by executing the Addendum. Proof of scienter is not required to rescind for equitable fraud, and in any event Sanofi acted with knowledge.

189. Fourth ground — mistake in an incorporated recital. The Addendum's sole recital of fact, that the parties entered into the Settlement Agreement on 17 September 2024, is contradicted by the instrument it amends, which both parties signed on 23 August 2024. That recital is acknowledged in the Addendum to be "true and correct" and is made part of it as a term. It is not true.

190. MMAS Research is entitled to rescission of the Addendum, to a declaration that Section X(J) is void and of no effect, and in the alternative to reformation of the Addendum so that Section X(J) does not operate.

191. MMAS Research received nothing under the Addendum, and no restoration by MMAS Research is required to place the parties in the position they occupied before it was made.

## <u>THIRD CLAIM FOR RELIEF</u>

## RESCISSION OF THE SETTLEMENT AGREEMENT

## (Against Sanofi)

192. MMAS Research repeats and incorporates each of the foregoing paragraphs. This Claim for Relief is pleaded in the alternative to the Third and Fourth Claims for Relief.

193. Under the law of New Jersey a settlement agreement may be rescinded where it was obtained by fraud, where there has been a failure of consideration, or where a material term has been breached. MMAS Research pleads each of the following to the standard of clear and convincing proof.

194. Sanofi breached Section V(A), a material term, on 19 September 2024 and repeatedly thereafter, as pleaded in the Third Claim for Relief. The breach began twenty-seven days after execution, was committed by Sanofi's own vendor function, was continued by Sanofi's in-house and outside counsel across three months, was directed to the plaintiff and to counsel of record in pending federal litigation against MMAS Research, extended to MMAS Research's banking instructions, and ended with the Settlement Agreement and those instructions on a public federal docket in support of a

motion to terminate MMAS Research from that action. Confidentiality was of the essence of the bargain.

195. Sanofi further warranted at Section VI(A) that there were no other persons or entities whose consent or joinder was necessary to make the provisions of the Settlement Agreement fully effective. That warranty was false when made. Sanofi then held the 2021 Addendum naming Donald E. Morisky as a co-Licensor, had been told by Dr. Morisky in May 2021 that MMAS Research had no authority, and had in January 2022 reviewed an amendment to the license with Dr. Morisky and Austin from which MMAS Research was excluded. In December 2024 Sanofi acted on that same belief by taking an indemnity against those persons. Sanofi cannot have held the warranty to be true and the indemnity to be necessary at the same time.

196. Section I(B) releases claims "existing now or arising in the future" relating to the 2017 Licensing Agreement. The 2021 Addendum is an addendum to that agreement and states that all of its terms apply. On Sanofi's construction the release therefore extends to Sanofi's conduct in the AMEERA-6 study — its election in August 2021 to administer and score the MMAS-8 outside the Morisky Widget, and the substitution of the copyright management information on MMAS Research's translations — conduct of which Sanofi alone had full knowledge and of which it told MMAS Research nothing while the Settlement Agreement was negotiated.

197. MMAS Research is entitled to rescission of the Settlement Agreement.

198. MMAS Research does not tender return of the $115,000 and does not seek to retain both the payment and the released claims. MMAS Research asks that the $115,000 be credited against the sums recovered in this action, so that the parties are restored to their respective positions by an accounting in the judgment rather than by a payment out.

199. Upon rescission, the claims pleaded in MMAS Research LLC v. Sanofi-Aventis France SA, Clario Corporation, F. Christopher Austin and Does 1–20, No. 3:22-cv-04339-ZNQ-DEA, which was dismissed without prejudice and in which nothing was adjudicated, are revived and are pleaded in the Sixth and Seventh Claims for Relief below.

## FOURTH CLAIM FOR RELIEF

## BREACH OF CONTRACT — SECTION V(B), PUBLIC STATEMENTS AND NON-DISPARAGEMENT

**(Against Sanofi)**

200. MMAS Research repeats and incorporates each of the foregoing paragraphs.

201. Section V(B) obliged Sanofi to make no public statement regarding the Settlement Agreement without MMAS Research's prior written consent, save as necessary to satisfy a public

reporting obligation, and obliged Sanofi not to disparage MMAS Research with respect to the subject matter of the Dispute.

202. Sanofi's statement of 20 September 2024 that, "based on your recent emails, we are taking another very close look at this matter and the settlement agreement to determine the appropriate course of action for Sanofi," was made to two persons adverse to MMAS Research, in answer to their assertions that MMAS Research owned nothing and had taken millions in stolen revenue, and without contradicting those assertions. It disparaged MMAS Research with respect to the subject matter of the Dispute.

203. Sanofi's statements on the call of 11 December 2024 were made without MMAS Research's consent, to the same two persons, in the knowledge that they were adverse to MMAS Research in identified federal litigation of which Sanofi had been given the case number.

204. Those statements became public statements regarding the Settlement Agreement when they were filed, in the form Sanofi made them, on the public docket of the Washington Action on 6 June 2025 — a consequence that was foreseeable to Sanofi from 19 September 2024 and intended by the persons to whom Sanofi spoke.

205. No public reporting obligation required any of those statements, and MMAS Research gave no consent.

206. As a direct and proximate result MMAS Research has been damaged, including in the respects particularized at Section L above. Any licensee, prospective licensee or counterparty of MMAS Research may now read on a public federal docket that Sanofi was reconsidering its settlement with MMAS Research because of assertions that MMAS Research owns nothing.

**FIFTH CLAIM FOR RELIEF**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Against Sanofi)**

207. MMAS Research repeats and incorporates each of the foregoing paragraphs.

208. New Jersey law implies in every contract a covenant of good faith and fair dealing.

209. Sanofi proposed and obtained the Section X(J) indemnity while it was in an undisclosed, continuing correspondence with the two persons whose claims that indemnity transfers to MMAS Research; while it held litigation papers those persons had sent it from two federal cases against MMAS Research; and after it had told them it was taking "another very close look at this matter and the settlement agreement."

210. Sanofi also entertained Philip Morisky's offer of "a formal release from me regarding the use of the MMAS-8" — a competing grant covering the same subject matter as the license

relationship Sanofi held with MMAS Research — without disclosing that offer to MMAS Research.

211. Sanofi's conduct was not a single omission. From 20 September 2024 to 7 December 2024 Sanofi maintained a posture of silence toward MMAS Research while corresponding with persons adverse to it, answered those persons rather than its counterparty, and allowed MMAS Research to proceed in ignorance of what Sanofi was doing with the agreement it had just signed. That is evasion, and it was undertaken with bad motive: Sanofi had been offered a Morisky indemnity in January 2022 and obtained one from MMAS Research instead, for nothing, while holding MMAS Research's money.

212. That conduct deprived MMAS Research of the benefit of its bargain and of any ability to evaluate the risk it was being asked to assume.

213. MMAS Research is entitled to damages and to rescission or reformation of the Addendum and of Section X(J).

**PART TWO**

**THE INSTRUMENT AND THE LICENSE — 2017 TO 2024**

**<u>SIXTH CLAIM FOR RELIEF</u>**

**BREACH OF THE 2017 LICENSING AGREEMENT AND THE 2021 ADDENDUM**

**(Against Sanofi)**

214. MMAS Research repeats and incorporates each of the foregoing paragraphs. This Claim for Relief is pleaded conditionally upon rescission of the Settlement Agreement as sought in the Second Claim for Relief, and in the alternative it is pleaded as to all conduct occurring after 23 August 2024.

215. The 2017 Licensing Agreement and the 2021 Addendum are valid and enforceable contracts, and MMAS Research performed its obligations under them.

216. Sanofi breached Section F of the 2017 Licensing Agreement and Section 6 of the 2021 Addendum, which require that all MMAS tests be scored, coded and reported through the Morisky Widget. Sanofi elected in August 2021 to administer the MMAS-8 in the ERT electronic clinical outcome assessment system instead, and its own vendor manager recorded the position in writing on 24 January 2022: "Morisky Widget will not be used."

217. Sanofi breached Section 3 by permitting investigators, clinicians and researchers who had not been trained and certified on the Morisky Widget to administer and score the MMAS-8.

218. Sanofi breached Section 5 by using electronic clinical outcome assessment screens to administer the MMAS-8 without MMAS Research's approval of those screens.

219. Sanofi breached Section 7 by administering MMAS-8 translations that MMAS Research had not verified and certified for the EFC 16133 Study.

220. Sanofi breached Section 9 and Exhibit 2 by demanding the return of the $42,000 paid

for six years of Amazon Europe Web Services, and by procuring Dr. Morisky and Austin to press that demand on MMAS Research's own counsel, while continuing to require the hosted environment.

221. Sanofi further breached the 2017 Licensing Agreement and the 2021 Addendum by negotiating an amendment to those instruments with Dr. Morisky and Austin, in January 2022, from which MMAS Research — a named Licensor on both — was excluded, and by declining to share that amendment with MMAS Research on the stated ground that MMAS Research was an "external party."

222. As a direct and proximate result MMAS Research has been damaged in an amount to be proven at trial, including the fees payable under Exhibit 2 of the 2021 Addendum for the life of the EFC 16133 Study and the value of the scoring, coding and reporting that Sanofi took outside the Morisky Widget.

223. Sanofi's breach of Section 6 was not inadvertent. Sanofi elected in August 2021 to use a third-party electronic clinical outcome assessment system in place of the Morisky Widget, and its vendor manager confirmed the position in writing on 24 January 2022: "Morisky Widget will not be used." Sanofi terminated the study in or about August 2022 without ever scoring or coding a single MMAS-8 test in the Morisky Widget.

## <u>SEVENTH CLAIM FOR RELIEF</u>

## BREACH OF THE TRANSLATION SERVICES AGREEMENT

## (Against Dr. Donald E. Morisky)

224. MMAS Research repeats and incorporates each of the foregoing paragraphs.

225. The Agreement for Translation Services of 27 July 2021 is a valid and enforceable contract between Dr. Morisky on the one part and MMAS Research and Steven Trubow on the other. Mr. Trubow signed it on 28 July 2021 and Dr. Morisky signed it on 29 July 2021.

226. MMAS Research performed. It obtained ISO-certified translations of the breast-cancer MMAS-8 as paragraph 1 requires, provided them to Dr. Morisky for review as paragraph 2 requires, and delivered them for use in the study.

227. Paragraph 8 provides that "[t]he MMAS Translations shall be deemed 'MMAS RESEARCH IP' and subject to the disposition of MMAS RESEARCH IP under the terms of the CR 2A Agreement between the Parties."

228. Dr. Morisky breached paragraph 8 by removing MMAS Research's copyright management information from the translations and substituting a notice claiming the work as his own 2006 property, and by delivering the altered instrument to Sanofi for use in the AMEERA-6 study.

229. Dr. Morisky further breached the agreement, and the covenant of good faith and fair dealing implied in it, by representing to Sanofi that his approval was the condition of Sanofi's

authorization to use the translations — "My review and approval of translations must take place first before Sanofi is authorized to use it" — when paragraph 3 gave him a right of approval over the translations and nothing more, and paragraph 8 placed title in MMAS Research.

230. Paragraph 6 provides that all funds paid by Sanofi for the translations were to be collected and disbursed by Barta, Jones & Foley, P.C. to Dr. Morisky and to MMAS Research on a fifty-fifty basis after a fifteen per cent contingency fee and reimbursement of expenses. Dr. Morisky breached that provision by directing that firm, on 21 January 2022, to remit funds already disbursed back to Sanofi and to himself.

231. As a direct and proximate result MMAS Research has been damaged in an amount to be proven at trial, including the cost of the ISO-certified translations it procured and the Translation Services fees priced at Exhibit 2 of the 2021 Addendum.

**EIGHTH CLAIM FOR RELIEF**

**COPYRIGHT INFRINGEMENT — 17 U.S.C. § 501**

**(Against Sanofi)**

232. MMAS Research repeats and incorporates each of the foregoing paragraphs.

233. MMAS Research owns the Morisky Widget Copyright, United States Copyright Registration No. TX 8-816-517, registration date 3 December 2019. The Morisky Widget MMAS-8, its certified translations, and the scoring, coding and reporting expression embodied in the registered work are protected by that registration.

234. On information and belief, Sanofi reproduced, distributed, publicly displayed and prepared derivative works from the Morisky Widget MMAS-8 in the conduct of the study reported in the Teriflunomide Publication: in the Czech-language instrument administered to patients at ten Czech hospital sites; in the electronic case report forms used to collect and process the responses; in the scoring and coding of those responses outside the Morisky Widget; and in the Teriflunomide Publication itself.

235. Sanofi did so without license or permission from MMAS Research, without attribution, and without any copyright notice.

236. The study reported in the Teriflunomide Publication is not the ELIPRO study and, on information and belief, was not conducted under the 2017 Licensing Agreement. The claim is therefore not a Settled Claim and was not released.

237. Conditionally upon rescission of the Settlement Agreement as sought in the Second Claim for Relief, MMAS Research further alleges that Sanofi reproduced, distributed, publicly displayed and prepared derivative works from the Morisky Widget MMAS-8 and its certified

translations in the conduct of the AMEERA-6 study, in the languages listed at Exhibit 1 to the 2021 Addendum, without scoring, coding or reporting the tests through the Morisky Widget as the license requires, from August 2021 until the study was terminated in or about August 2022.

238. Sanofi's infringement was willful. Sanofi had been a Morisky Widget licensee since 5 July 2017, had executed a further Morisky Widget license for Sanofi China on 26 January 2018, had been sued in this Court in 2022 for precisely this conduct, and knew that all MMAS tests had to be scored, coded and reported through the Morisky Widget and that every publication had to carry the required attribution and copyright notice.

239. MMAS Research is entitled to its actual damages and Sanofi's profits under 17 U.S.C. § 504(b), or in the alternative to statutory damages, and to its costs and attorneys' fees under 17 U.S.C. § 505.

## NINTH CLAIM FOR RELIEF

## REMOVAL AND FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION — 17 U.S.C. § 1202

**(Against Sanofi and Dr. Donald E. Morisky)**

240. MMAS Research repeats and incorporates each of the foregoing paragraphs.

241. The notice "© Morisky Widget MMAS Software Registration TX 8-816-517," appearing on each certified MMAS-8 translation that MMAS Research prepared and delivered for the AMEERA-6 study, is copyright management information within the meaning of 17 U.S.C. § 1202(c). It identifies the work, the copyright owner and the registration, and it was conveyed in connection with copies of the work.

242. That information was removed from MMAS Research's Spanish for Chile translation and replaced with "© 2006 Donald E. Morisky." Apart from that line the two documents are identical: the introductory paragraph and all eight items are word for word the same.

243. MMAS Research did not authorize the removal or the replacement. Paragraph 8 of the Translation Services Agreement, executed twenty-seven days before the substitution, deems the MMAS Translations "MMAS RESEARCH IP."

244. Dr. Morisky removed or altered that copyright management information. He obtained MMAS Research's original from Sanofi on 25 August 2021, having told Sanofi the day before that his "review and approval of translations must take place first before Sanofi is authorized to use it," and he returned to Sanofi the same instrument bearing his own notice in place of MMAS Research's.

245. He did so intentionally. He had signed the Translation Services Agreement on 29 July 2021, twenty-seven days earlier, agreeing that the MMAS Translations are MMAS RESEARCH IP;

and Sanofi had told him on 24 August 2021 that the instrument had come from Mr. Trubow and had already been integrated into the eCOA design.

246. He did so knowing, or having reasonable grounds to know, that it would induce, enable, facilitate or conceal infringement. In the same period he was telling Sanofi that MMAS Research had no authority over the MMAS-8, and the effect of the substitution was to present to Sanofi, to its electronic clinical outcome assessment vendor and to the investigative sites an instrument naming him rather than MMAS Research as the source of permission.

247. Dr. Morisky thereby violated 17 U.S.C. § 1202(b)(1) by intentionally removing or altering copyright management information, 17 U.S.C. § 1202(a)(1) by providing copyright management information that was false, and 17 U.S.C. § 1202(b)(3) by distributing to Sanofi a copy of the work knowing that the information had been removed or altered without MMAS Research's authority.

248. The substituted notice is false. The instrument is a 2021 breast-cancer translation prepared under the Translation Services Agreement and delivered in the Morisky Widget rendering; it is not a 2006 work of Dr. Morisky, and Dr. Morisky is not its copyright owner.

249. On information and belief Sanofi knew of the removal and the substitution and consented to them. Sanofi held MMAS Research's original, acknowledged in writing on 24 August 2021 that it had received that original from Mr. Trubow and had integrated it into the eCOA design, and on 25 August 2021 forwarded that original to Dr. Morisky at his request, the day after he told Sanofi that his "review and approval of translations must take place first before Sanofi is authorized to use it."

250. Sanofi thereafter distributed and publicly displayed copies of the altered instruments, and caused them to be distributed and displayed by its electronic clinical outcome assessment vendor and by the investigative sites, knowing that the copyright management information had been removed or altered without MMAS Research's authority.

251. Sanofi did so knowing, or having reasonable grounds to know, that it would induce, enable, facilitate or conceal an infringement of MMAS Research's rights in the Morisky Widget MMAS-8 and its certified translations. The substitution replaced the notice of the registered work that Sanofi was licensed to use, and only through the Morisky Widget, with a notice attributing the work to the person who was then telling Sanofi that MMAS Research had no authority to license it.

252. Sanofi thereby violated 17 U.S.C. § 1202(a) by providing and distributing copyright management information that was false, and 17 U.S.C. § 1202(b)(1) and (b)(3) by intentionally removing or altering copyright management information and by distributing copies of works knowing

that such information had been removed or altered without authority.

253. MMAS Research is entitled, as against each of Sanofi and Dr. Morisky, at its election, to actual damages and that defendant's profits under 17 U.S.C. § 1203(c)(2), or to statutory damages of not less than $2,500 and not more than $25,000 for each violation under 17 U.S.C. § 1203(c)(3)(B), together with costs and reasonable attorneys' fees under 17 U.S.C. § 1203(b)(4) and (b)(5), and to injunctive relief under 17 U.S.C. § 1203(b)(1).

**<u>TENTH CLAIM FOR RELIEF</u>**

**MISAPPROPRIATION OF TRADE SECRETS — 18 U.S.C. § 1836**

**(Against Sanofi)**

254. MMAS Research repeats and incorporates each of the foregoing paragraphs.

255. The MMAS coding and scoring criteria applied by the Morisky Widget are trade secrets within the meaning of 18 U.S.C. § 1839(3). They derive independent economic value from not being generally known or readily ascertainable, and MMAS Research takes reasonable measures to keep them secret, including by licensing only the software that applies them and by designating them as trade secrets in its licenses.

256. The Morisky Widget MMAS-8 is used in interstate and foreign commerce, including in the Czech Republic, France, China and the United States.

257. Sanofi acquired knowledge of those criteria under written licenses that expressly forbade their disclosure in any publication, presentation or website without MMAS Research's written permission, and thus under a duty to maintain their secrecy.

258. Sanofi disclosed those criteria without express or implied consent by publishing them in the Teriflunomide Publication, which states the three bands and their cut-points and reports patient results in those bands.

259. Sanofi's misappropriation was willful and malicious.

260. MMAS Research is entitled to damages for actual loss and for unjust enrichment under 18 U.S.C. § 1836(b)(3)(B), to exemplary damages under § 1836(b)(3)(C), to attorneys' fees under § 1836(b)(3)(D), and to injunctive relief under § 1836(b)(3)(A).

**PART THREE**

**THE CR2A AND THE COURSE OF CONDUCT ACROSS BOTH PERIODS**

**<u>ELEVENTH CLAIM FOR RELIEF</u>**

**BREACH OF THE CR2A — SECTION II PARAGRAPH 14, NON-DISPARAGEMENT**

**(Against Dr. Donald E. Morisky and Philip Morisky)**

261. MMAS Research repeats and incorporates each of the foregoing paragraphs.

262. The CR2A Settlement Agreement of 4 December 2020 (the "CR2A") is a valid and enforceable written agreement. It was executed by Dr. Donald E. Morisky, Susan Morisky, Philip Morisky and Marty Morisky, and by Morisky Medication Adherence Research, LLC by Philip Morisky as its Managing Member, on the one part, and by MMAS Research LLC and Steven Trubow on the other.

263. Section II, paragraph 14 of the CR2A provides: "Each Party covenants and agrees to not make any public defamatory statement about any party to this Agreement."

264. The CR2A governs both periods pleaded in this Complaint. Exhibit 1 to the CR2A identifies the registered works. Exhibit 4 identifies the institutional licensee base. And paragraph 8 of the Agreement for Translation Services of 27 July 2021, pleaded above, expressly subjects the MMAS Translations to "the disposition of MMAS RESEARCH IP under the terms of the CR 2A Agreement between the Parties." Dr. Morisky signed that agreement on 29 July 2021.

265. The Defendants have themselves treated the CR2A as governing. On 21 January 2022 Dr. Morisky wrote that "CR2A trumps Sanofi addendum and vests in me ownership of everything MMAS," and on that footing directed that the funds Sanofi had paid under the 2021 Addendum be returned. A party who invokes an agreement to claim its benefits is bound by its covenants.

266. Dr. Donald E. Morisky breached Section II, paragraph 14 on 19 May 2021, five months after signing, by writing to Magdalena Potocka at Sanofi under the heading "HIGH ALERT! Re: DO NOT DEAL WITH Steve Trubow," stating that Mr. Trubow "is not authorized to make new business deals nor arrangements for my MMAS scales" and directing Sanofi to "communicate only with me and my legal counsel."

267. Dr. Donald E. Morisky breached it again on 21 January 2022 by writing to Sanofi that the CR2A vested in him "ownership of everything MMAS," a statement that necessarily asserted MMAS Research held nothing.

268. Philip Morisky breached Section II, paragraph 14 between 19 September and 11 December 2024 by writing to Sanofi, in terms, that "Trubow does not own any rights to the MMAS-4 and MMAS-8 scales," that "the 'widget' is illegally hosting the MMAS scales," and that MMAS Research had taken "millions in stolen revenue."

269. This Claim for Relief is pleaded solely on statements made outside any judicial or other governmental proceeding. It is not pleaded on any declaration, pleading, exhibit or statement filed in or made in the course of any court proceeding, and no such statement is relied upon as a breach.

270. Each statement was made in private written correspondence to Sanofi, an actual and prospective purchaser of licenses to the MMAS, and to its named employees. None was published to

the public, and none concerned a matter of public concern.

271. Breach of a contractual covenant not to disparage requires no proof of falsity, of fault, or of special damages. A party who has bargained away the right to make a class of statement breaches by making it, whether or not the statement is true. In any event each statement was false, and each was contradicted in writing by the speakers themselves: in 2017 Dr. Morisky designated Mr. Trubow his Chief Investigator and directed licensees to him for retroactive licenses, and on 27 May 2021 counsel for Dr. Morisky withdrew the 19 May 2021 position, confirming to Sanofi that its request "falls under the existing license Sanofi has with MMAS Research, LLC."

272. The CR2A was negotiated and executed in the State of Washington and is governed by Washington law. The limitation period for an action upon a written contract under RCW 4.16.040 is six years.

273. As a direct and proximate result of these breaches MMAS Research has been damaged in an amount to be proven at trial.

**<u>TWELFTH CLAIM FOR RELIEF</u>**

**TORTIOUS INTERFERENCE WITH CONTRACT**

**(Against F. Christopher Austin, Philip Morisky and Dr. Donald E. Morisky)**

274. MMAS Research repeats and incorporates each of the foregoing paragraphs.

275. The Settlement Agreement is a valid contract between MMAS Research and Sanofi.

276. Austin and Philip Morisky knew of it. Philip Morisky knew its payment term and had calculated the expiry of its ninety-day period. Austin had a copy of it and attached it to his email of 5 June 2025.

277. Austin and Philip Morisky intentionally and without justification induced Sanofi to breach Sections V(A) and V(B). They solicited the disclosure; Philip Morisky asked Sanofi in writing to "confirm what decision Sanofi made regarding any payment" and stated that he "need[ed] to know more information about the original settlement in the first place"; he pressed Sanofi to decide against paying MMAS Research before the ninety-day period expired; he offered Sanofi a competing release in place of the MMAS Research license; and Austin arranged, attended and then documented the call at which Sanofi made the disclosure.

278. Neither defendant had any privilege or justification. Neither was a party to the Settlement Agreement, a released party under it, or bound by any confidentiality agreement with MMAS Research. Austin's role as counsel for a litigant adverse to MMAS Research is not a license to procure a third party's breach of that third party's confidentiality covenant with MMAS Research.

279. They then destroyed what remained of the confidentiality by filing the Settlement

Agreement, the wiring instructions and an account of the call on a public federal docket on 6 June 2025, in support of a motion to terminate MMAS Research and Mr. Trubow from the Washington Action.

280. Sanofi breached the Settlement Agreement as alleged, and MMAS Research was damaged as a direct and proximate result, including in the respects particularized at Section L above.

281. As against Dr. Donald E. Morisky and F. Christopher Austin, this Claim for Relief is pleaded additionally on a different contract. The 2017 Licensing Agreement and the 2021 Addendum are valid contracts between MMAS Research and Sanofi Aventis France. Dr. Morisky and Austin knew of them; Dr. Morisky is a named co-Licensor on the 2021 Addendum.

282. They intentionally and without justification induced Sanofi to breach those contracts: by telling Sanofi in May 2021 not to deal with MMAS Research and to communicate only with them; by telling Sanofi in August 2021 that Sanofi was not authorized to use the translations without Dr. Morisky's approval; by procuring Sanofi's demand for the return of the $42,000 paid for Amazon Europe Web Services under Section 9 and Exhibit 2 of the 2021 Addendum; and by negotiating with Sanofi in January 2022 an amendment to those instruments from which MMAS Research, a named Licensor, was excluded.

283. Sanofi breached those contracts as pleaded in the Sixth Claim for Relief, and MMAS Research was damaged as a direct and proximate result.

284. The conduct was willful, malicious and in conscious disregard of MMAS Research's rights, warranting punitive damages.

**THIRTEENTH CLAIM FOR RELIEF**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(Against F. Christopher Austin, Philip Morisky and Dr. Donald E. Morisky)**

285. MMAS Research repeats and incorporates each of the foregoing paragraphs.

286. MMAS Research had a reasonable expectation of continued and future economic advantage from its licensing relationship with Sanofi, which had begun on 5 July 2017, had been extended to Sanofi China on 26 January 2018, and had been continued through the Settlement Agreement.

287. Austin and Philip Morisky knew of that relationship and of that expectation.

288. They intentionally and maliciously interfered with it: by telling Sanofi that MMAS Research "does not own any rights to the MMAS and the widget and that any settlements regarding the MMAS must go through our party"; by sending Sanofi litigation papers from two federal cases for the declared purpose of proving that proposition; by asking Sanofi to stop the settlement and reconsider the payment owed to MMAS Research; and by offering Sanofi a competing "formal release ...

regarding the use of the MMAS-8" from a source other than MMAS Research.

289. Austin described the method to the District of Massachusetts in his own words on 23 October 2025: the letter told its recipients that "if you purport to use it, even if it is licensed to you by somebody else, you will be in violation of Dr. Morisky's sole and exclusive rights to that copyright and subject yourself to potential copyright infringement action." That is the same proposition Philip Morisky and Austin put to Sanofi in September 2024.

290. Philip Morisky described the method to Sanofi in his own words: "I have established global collaborations with Servier, Janssen, Novo, Eli Lilly and others in order to take back control of the MMAS and ensure that proper licensing protocol is followed, and our collaborations are harmonious. I hope to establish this same connection with Sanofi." Sanofi is a French pharmaceutical company; Servier is a French pharmaceutical company; and the Servier relationship was offered to Sanofi as the demonstration of what Sanofi was being invited to do.

291. Dr. Donald E. Morisky interfered with the same relationship and by the same method three years earlier. On 19 May 2021 he wrote to Sanofi under the heading "HIGH ALERT! Re: DO NOT DEAL WITH Steve Trubow," telling Sanofi that Mr. Trubow "is not authorized to make new business deals nor arrangements for my MMAS scales" and to "communicate only with me and my legal counsel." On 21 January 2022 he wrote that "CR2A trumps Sanofi addendum and vests in me ownership of everything MMAS," and directed that the money Sanofi had paid under the 2021 Addendum be returned to Sanofi.

292. But for that interference, there is a reasonable probability that MMAS Research would have realized the economic advantage of its continued licensing relationship with Sanofi.

293. MMAS Research was damaged as a direct and proximate result, and the conduct warrants punitive damages.

**FOURTEENTH CLAIM FOR RELIEF**

**TRADE LIBEL AND PRODUCT DISPARAGEMENT**

**(Against F. Christopher Austin, Philip Morisky and Dr. Donald E. Morisky)**

294. MMAS Research repeats and incorporates each of the foregoing paragraphs.

295. This Claim for Relief is pleaded on the statements Philip Morisky and Austin published to Sanofi between 19 September 2024 and 11 December 2024. It is not pleaded on any statement made in the course of a judicial proceeding.

296. Philip Morisky published to Sanofi, in writing, the following statements of fact concerning MMAS Research's title to and quality of its property: that "Trubow does not own any rights to the MMAS-4 and MMAS-8 scales"; that "the 'widget' is illegally hosting the MMAS scales"; that

"any settlement for alleged use of the actual MMAS Morisky questionnaire can only be authorized by my father Dr Donald Morisky and myself as the company responsible for the rights of the MMAS"; that MMAS Research had taken "millions in stolen revenue"; that "Sanofi already paid way too much for services that were not even needed or used"; that "Trubow does not own any rights to the MMAS and the widget and that any settlements regarding the MMAS must go through our party"; and that the litigation papers he was sending "will ultimately prove" it.

297. Austin published material to Sanofi in the same thread and by separate email, acknowledged by Sanofi on 8 October 2024, and joined in and adopted those statements on the call of 11 December 2024.

298. Dr. Donald E. Morisky published to Sanofi, in writing, the following statements of fact concerning MMAS Research's title to its property: that Mr. Trubow "is not authorized to make new business deals nor arrangements for my MMAS scales"; that Sanofi should "not entertain any communication from his lawyer, Peter Hoeller or Mr. Trubow"; that "My review and approval of translations must take place first before Sanofi is authorized to use it"; and that "CR2A trumps Sanofi addendum and vests in me ownership of everything MMAS." He published the same proposition in a different form by delivering to Sanofi an MMAS Research translation from which MMAS Research's copyright notice had been removed and replaced with his own.

299. Each of those statements was false. MMAS Research is the registered owner of the Morisky Widget, and the United States Court of Appeals for the Ninth Circuit held on 13 March 2024 that MMAS Research "never transferred its copyright and remains the registered owner of the Morisky Widget." No court has held that MMAS Research does not own the Morisky Widget, the Morisky Widget MMAS-8 or the Morisky Widget MMAS-4.

300. The material Philip Morisky forwarded as proof of those statements did not support them. The motion to dismiss he sent on 8 October 2024 was a challenge to personal jurisdiction in the District of Massachusetts, argued on 23 October 2025, in which his own counsel told the Court that the case turned on whether the April 2022 letter and a later email were contacts sufficient to hale his clients into that forum. It decided nothing about who owns the Morisky Widget, and it was never going to.

301. Each statement was published to a third party — Sanofi — which was at the time a licensee and settlement counterparty of MMAS Research, and each was made for the purpose of inducing Sanofi to withhold payment, to disregard its license, and to take its permission from a different source.

302. Both defendants knew the statements were false or published them with reckless disregard for their truth, and published them with malice and with the intent to cause pecuniary harm

to MMAS Research.

303. MMAS Research has suffered special damages as a direct and proximate result, particularized at Section L above and including the attorneys' fees and costs incurred in the Washington Action proceedings the disclosure was obtained to advance, the exposure to the $4.5 million sought in that action, and the impairment of MMAS Research's licensing relationships.

**FIFTEENTH CLAIM FOR RELIEF**

**DEFAMATION**

**(Against F. Christopher Austin, Philip Morisky and Dr. Donald E. Morisky)**

304. MMAS Research repeats and incorporates each of the foregoing paragraphs.

305. This Claim for Relief is likewise pleaded on the statements published to Sanofi between 19 September 2024 and 11 December 2024, and not on any statement made in the course of a judicial proceeding.

306. The statements set out above assert, of and concerning MMAS Research and its managing member, that they claim rights they do not have, that they are unlawfully hosting property belonging to another, that they have taken "millions in stolen revenue," and that they charged Sanofi for "services that were not even needed or used." Those statements accuse MMAS Research of dishonesty and of misconduct in its business and are defamatory on their face.

307. The statements are false, were published to Sanofi without privilege, and were made with knowledge of their falsity or with reckless disregard for the truth.

308. The statements injure MMAS Research in its trade and business and are actionable without proof of special damage; in the alternative, MMAS Research has suffered the special damages particularized at Section L above.

309. The conduct was willful and malicious and warrants punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against Defendants as follows:

i. A declaration that Sanofi breached Section V(A) and Section V(B) of the Settlement Agreement;

ii. Actual and compensatory damages against Sanofi on the Third, Fourth and Fifth Claims for Relief, in an amount to be proven at trial;

iii. On the First Claim for Relief, rescission of the Addendum of 3 and 7 December 2024 and a declaration that Section X(J) of the Settlement Agreement is void and of no effect, or in the

alternative reformation of the Addendum so that Section X(J) does not operate to transfer to MMAS Research the risk of claims about which Sanofi withheld its own knowledge;

iv. On the Second Claim for Relief, rescission of the Confidential Settlement Agreement and Release of 23 August 2024, with the $115,000 paid under Section II(A) credited against the sums recovered in this action rather than tendered back, and a declaration that the releases at Section III and the waiver at Section III(C) are of no effect;

v. On the Sixth Claim for Relief, damages for breach of the 2017 Licensing Agreement and the 2021 Addendum, specific performance of Section 6 of the 2021 Addendum, and an injunction restraining the further administration of the MMAS-8 in the EFC 16133 Study otherwise than as that license requires;

vi. An order requiring Sanofi to certify, in writing and under oath, every disclosure it has made of the Settlement Agreement, its terms, the correspondence relating to it, or MMAS Research's wiring instructions, identifying each recipient, each date and each document transmitted;

vii. An order requiring Sanofi, Austin, Philip Morisky and Dr. Donald E. Morisky to take every step available to them to obtain the sealing or striking of the Settlement Agreement, the wiring instructions and the associated correspondence from the public docket of the Washington Action, and restraining them from any further disclosure or use of those materials;

viii. On the Seventh Claim for Relief, damages against Dr. Donald E. Morisky for breach of the Agreement for Translation Services of 27 July 2021, and an accounting under paragraph 6 of that agreement;

ix. On the Eighth Claim for Relief, MMAS Research's actual damages and Sanofi's profits attributable to the infringement under 17 U.S.C. § 504(b), or at MMAS Research's election statutory damages, together with costs and attorneys' fees under 17 U.S.C. § 505;

x. On the Ninth Claim for Relief, statutory damages of not less than $2,500 and not more than $25,000 for each violation of 17 U.S.C. § 1202 under 17 U.S.C. § 1203(c)(3)(B), or at MMAS Research's election actual damages and profits under § 1203(c)(2), together with costs and attorneys' fees under § 1203(b)(4) and (b)(5);

xi. On the Tenth Claim for Relief, damages for actual loss and for unjust enrichment under 18 U.S.C. § 1836(b)(3)(B), exemplary damages under § 1836(b)(3)(C), and attorneys' fees under § 1836(b)(3)(D);

xii. An injunction restraining Sanofi from any further use, reproduction, distribution or publication of the Morisky Widget MMAS-8, the Morisky Widget MMAS-4 or the MMAS coding and scoring criteria otherwise than through the Morisky Widget under a written license from MMAS

Research;

xiii. An order requiring Sanofi to procure the publication of a corrigendum to Pharmaceuticals 2022;15:1248 carrying the attribution and copyright notice required of a Morisky Widget licensee, and removing the published coding and scoring criteria;

xiv. An accounting by Sanofi of every study, publication, presentation and dataset since 5 July 2017 in which Sanofi or any of its affiliates or contractors administered, scored, coded or reported the MMAS-8 or the MMAS-4, identifying for each whether the tests were scored and coded through the Morisky Widget and under what license;

xv. Compensatory, special and punitive damages against F. Christopher Austin, Philip Morisky and Dr. Donald E. Morisky on the Eleventh, Twelfth, Thirteenth and Fourteenth Claims for Relief;

xvi. An injunction restraining Austin, Philip Morisky and Dr. Donald E. Morisky from publishing to any licensee, prospective licensee or counterparty of MMAS Research that MMAS Research does not own the Morisky Widget, the Morisky Widget MMAS-8 or the Morisky Widget MMAS-4, or that permission for their use must be obtained from any person other than MMAS Research;

xvii. MMAS Research's reasonable attorneys' fees and costs, including under Section X(G) of the Settlement Agreement;

xviii. Pre-judgment and post-judgment interest; and

xix. Such other and further relief as the Court deems just and proper.

**HANKIN PATENT LAW, APC**

By: /Marc E. Hankin/

Marc E. Hankin, Esq.
N.J. Attorney I.D. No. 057361993
11414 Thurston Circle
Los Angeles, California 90049
(310) 979-3600
Marc@HPL.Law
Attorneys for Plaintiff,
MMAS Research LLC

Dated: October 8, 2026

**JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

**HANKIN PATENT LAW, APC**

By: /Marc E. Hankin/

Marc E. Hankin, Esq.
N.J. Attorney I.D. No. 057361993
11414 Thurston Circle
Los Angeles, California 90049
(310) 979-3600
Marc@HPL.Law
Attorneys for Plaintiff,
MMAS Research LLC

Dated: October 8, 2026

## VERIFICATION OF COMPLAINT

**(Local Civil Rule 11.2; 28 U.S.C. § 1746)**

I, STEVEN A. TRUBOW, declare as follows:

1. I am the Principal Representative and Managing Member of Plaintiff MMAS Research LLC, a Washington limited liability company. I make this Verification as the person on whose behalf this pleading is presented, in accordance with Local Civil Rule 11.2.
2. I have read the foregoing Complaint and know its contents.
3. The factual allegations of the Complaint are true of my own personal knowledge, except as to those matters alleged on information and belief, and as to those matters I believe them to be true.
4. The agreements and correspondence quoted and described in the Complaint are genuine documents of which I have personal knowledge, and the passages quoted from them are quoted accurately.
5. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Oct 8, 2026, at Tokyo Japan

STEVEN A. TRUBOW

Principal Representative and Managing Member

MMAS RESEARCH LLC

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I, STEVEN A. TRUBOW, Principal Representative and Managing Member of Plaintiff MMAS Research LLC, certify pursuant to Local Civil Rule 11.2 that the matter in controversy in this action is related to the following other actions pending in courts of the United States, and is not the subject of any pending arbitration or administrative proceeding:

1. Donald E. Morisky v. MMAS Research LLC, Steven Trubow and others, No. 2:21-cv-01301-RSM-DWC, in the United States District Court for the Western District of Washington at Seattle. The declarations and exhibit described in this Complaint were filed in that action on 6 June 2025. Sanofi Winthrop Industrie is not a party to it.
2. MMAS Research LLC et al. v. The Children's Hospital Corporation et al., No. 24-12108-DJC, in the United States District Court for the District of Massachusetts. F. Christopher Austin appears in that action as counsel for Donald E. Morisky and Morisky Medication Adherence Research, LLC. The transcript of the motion hearing of 23 October 2025 in that action is relied on in this Complaint. Sanofi Winthrop Industrie is not a party to it.
3. MMAS Research LLC v. SANOFI-Winthrop, IQVIA Holdings Inc., Daiichi Sankyo Japan, Morisky Medication Adherence Research LLC, F. Christopher Austin, Donald Morisky, Phillip Morisky and Does 1–10, No. 2:25-cv-07439, in the United States District Court for the Central District of California. That action concerns the ownership and infringement of the Morisky Widget and does not plead the Confidential Settlement Agreement of 23 August 2024, the Addendum of 3 and 7 December 2024, the disclosures alleged in this Complaint, the Agreement for Translation Services of 27 July 2021, the substitution of copyright management information on the AMEERA-6 translations, or the Teriflunomide Publication. F. Christopher Austin, Donald Morisky and Phillip Morisky are named in that action and are named here, on different facts and different claims.

The action resolved by the agreement at issue in this Complaint, MMAS Research LLC v. Sanofi-Aventis France SA, Clario Corporation, F. Christopher Austin and Does 1–20, No. 3:22-cv-04339-ZNQ-DEA, was filed in this Court and is closed.

I further certify that, to the best of my knowledge and belief, no other action or proceeding is contemplated, and no other parties should be joined in this action, other than as pleaded above and as to Does 1 through 20.

I certify under penalty of perjury that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed on Oct 8, 2026, at Tokyo Japan

STEVEN A. TRUBOW

Principal Representative and Managing Member

MMAS RESEARCH LLC

**HANKIN PATENT LAW, APC**

By: /Marc E. Hankin/

Marc E. Hankin, Esq.

N.J. Attorney I.D. No. 057361993

11414 Thurston Circle

Los Angeles, California 90049

(310) 979-3600

Marc@HPL.Law

Attorneys for Plaintiff,

Dated: October 8, 2026

MMAS Research LLC